**L. R. JACKSON and Mittie Jackson, Appellants,**

v.

**WHEATLEY SCHOOL DISTRICT NO. 28 OF ST. FRANCIS COUNTY, ARKANSAS, et al., Appellees.**

**No. 73–1364.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1973.

Decided Dec. 28, 1973.

Rehearing Denied Jan. 30, 1974.

---

34. Reply brief of Appellant 22–23.

Philip E. Kaplan, Little Rock, Ark., for appellants.

E. J. Butler, Forrest City, Ark., for appellees.

Before GIBSON, Circuit Judge, MOORE,* Senior Circuit Judge, and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

This is the third appeal to this court in a controversy that began in 1968 when four black elementary school teachers and the Arkansas Teachers Association filed a complaint in the United States District Court for the Eastern District of Arkansas against the recently desegregated Wheatley School District, the district's superintendent, and the members of the School Board. Two of the individual plaintiffs were L. R. Jackson and his wife, Mittie Jackson, who for 11 consecutive years had taught at the all-black Wheatley Central School until it was closed pursuant to a desegregation plan adopted by the district at the end of the 1967–68 school year, at which time their employment contracts were terminated. Plaintiffs alleged that the school district's nonrenewal of their contracts was based solely on race, in violation ·of their statutory civil rights and their constitutional right to equal protection of the law.[1] They sought

---

* Honorable LEONARD P. MOORE, Senior Circuit Judge, Second Circuit, sitting by designation.

1. Jurisdiction was established under 42 U.S. C. §§ 1981 and 1983 and under 28 U.S.C. § 1343(3) and (4).

damages, injunctive relief to prevent future racial discrimination, and immediate reinstatement.

Following a full trial on the merits, the district court, Oren Harris, Chief Judge, dismissed the complaint. Plaintiffs appealed that dismissal, assigning error to Judge Harris' failure to find that their discharge was racially motivated. On appeal, 430 F.2d 1359 (8th Cir. 1970), this court found that racial discrimination did in fact motivate the discharge of three of the teachers, including the Jacksons; vacated the district court's decree to that extent; and remanded the case with the suggestion that Smith v. Morrilton School District No. 32, 365 F.2d 770 (8th Cir. 1966), serve as a guideline for fashioning appropirate relief.[2]

Upon remand Judge Harris conducted a hearing and, where substantiating evidence had been introduced, awarded damages to each teacher for certain of the expenses incurred in seeking other employment and for earnings lost between the date of discharge and August 11, 1970, the date of the first Court of Appeals opinion (*Jackson I*). The teachers appealed the district court's refusal to order reinstatement; its refusal to grant damages after August 11, 1970; its allegedly incorrect computation of expenses and salary loss for 1968–69 and 1969–70; and its failure to award additional damages to the Jacksons for the expenses they incurred in maintaining a second household during the 1969–70 school year, allegedly necessitated by the Jacksons' inability to find suitable employment within a reasonable distance from their permanent residence in Brinkley, Arkansas. On appeal before this court in *Jackson II*, 464 F.2d 411 (8th Cir. 1972): (1) the trial court's computation of expenses and salary loss and its refusal to award compensation for the Jacksons' maintenance of a second residence were sustained as based on findings that were not clearly erroneous; (2) the school district was ordered to ascertain which teachers still desired reemployment therein and to offer them reinstatement on the basis of Smith v. Morrilton; (3) appropriate damages were held to include the period from June 11, 1970[3] to the effective date of reemployment for all those teachers desiring to return to work, subject to the general duty to mitigate damages; and (4) Mrs. Jackson's duty to mitigate damages was held not to include an obligation to live apart from her spouse,[4] and the burden was placed on the Board of Education to prove that Mrs. Jackson could have found a teaching position in or near the community where the family lived. The case was thus again remanded for determination by the district court whether Mrs. Jack-

2. In Smith v. Morrilton, having found that the dismissal of several black teachers was racially motivated, this court ordered the recently desegregated Morrilton School District to ascertain which black faculty members were interested in reemployment and to offer to each teacher so interested the first position for which he or she was qualified in which a vacancy occurred; but the court carefully limited that preference only to the first such vacancy so offered to any particular teacher. The case was remanded with instructions to the trial court that it might grant injunctive relief where necessary to prevent future discrimination and to award damages to each teacher, subject to the duty to mitigate, for the interval between the termination of his employment and the date of the opinion or, where an interest in reemployment was manifested, the effective date of reemployment offered.

3. The opinion does not explain the significance of the June 11 date. Other portions of the opinion suggest that the important date is August 11, the date of the first Court of Appeals opinion.

4. Noting that Mrs. Jackson had quit one job which she had found outside the Wheatley district in order to be with her husband who had obtained employment in still another locale, this court held in *Jackson II* that such a move did not constitute a failure by Mrs. Jackson to mitigate damages: "We think that it is unreasonable to expect a married couple, such as the Jacksons, to maintain separate residences for the sole purpose of reducing damages caused by the unlawful actions of the school board." 464 F.2d at 413.

son could have found employment within a reasonable distance from the family home and whether she had made a reasonable effort to do so, with the express instruction, however, that "[i]f the board fails to meet its burden [of proof on these issues], Mittie Jackson is entitled to be compensated for her loss of earnings for the 1970–71 and 1971–72 school years, and such other damages as she may be able to establish." 464 F.2d at 414. Costs were assessed against Wheatley.

At a hearing on March 29, 1973, the district court heard evidence and argument on (1) the efforts of the Jacksons to obtain suitable employment and the salary losses and expenses they suffered incidental thereto; (2) the claimed willful refusal of the school district to offer the first suitable vacancy to the Jacksons despite this court's express order to that effect;[5] and (3) the Jacksons' prayer for attorneys' fees. Judge Harris' unpublished memorandum and order disposed of these issues in the following fashion: (1) Mrs. Jackson was awarded $8,060.24, Mr. Jackson $950.00—both sums expressly excluded travel and other incidental costs incurred in attempting to secure employment; (2) the Jacksons' right to reemployment upon the first suitable vacancies was reiterated, but their request for immediate rein-statement regardless of vacancies was not granted; and (3) plaintiffs were awarded $28.80 costs and $500.00 attorneys' fees but were denied their prayer for the balance of attorneys' fees incurred.[6]

Counsel for the plaintiffs moved for reconsideration of the district court's order, and upon its refusal, perfected this appeal. Now before this court for the third time, plaintiffs-appellants[7] raise three issues: their right to immediate reinstatement, their right to certain consequential damages, and their right to all attorneys' fees incurred since the inception of this case.

## I. RIGHT TO IMMEDIATE REINSTATEMENT

At the time of this appeal, the Jacksons had been reinstated and were teaching in Wheatley. Nonetheless, appellants ask this court to reconsider the remedial provisions spelled out in Smith v. Morrilton, *supra,* and reiterated in *Jackson II* because of the Wheatley School District's alleged bad faith, evidenced by the belated reemployment of the Jacksons well after the first suitable vacancies had occurred and had been filled by less qualified white teachers. They urge that this court replace the "first vacancy" rule with an "immediate reinstate-

---

5. Counsel for the Jacksons attempted to incorporate into the record of the instant case portions of the record of a related case before Judge Harris involving the Wheatley School District, McKissick v. Lee, et al., Civ. No. II–72–C–32. Part of this record (included in the appendix submitted on this appeal), together with certain testimony from the March 29, 1973 hearing in the instant case, suggests that the school district hired several white teachers, some of dubious qualification, after the Court of Appeals had rendered its opinion in *Jackson II* and with full knowledge of the import of that opinion.

6. The $500 award was attributed to the fees incurred in connection with the March 29, 1973 hearing. The district court reasoned that while plaintiffs were not entitled to attorneys' fees in the initiation of this litiga-

tion, the March 29 hearing and the pre-trial conference were conducted solely for the purpose of allowing the school district to prove that Mrs. Jackson could have obtained suitable employment within a reasonable distance of the family residence and that she failed to make a reasonable effort to do so; when the school board made no attempt to meet this burden of proof at the March 29 hearing, Judge Harris ordered that the school district bear the legal expenses incurred in connection therewith.

7. Only L. R. Jackson and Mittie Jackson bring this appeal; the case of Mrs. Malissa Meeks, a plaintiff in the original action, was fully disposed of by the court in *Jackson II,* although Judge Harris subsequently did order the school district to pay her interest on damages previously awarded.

ment" rule similar to that followed in the Fifth Circuit.[8]

■ Finding this issue moot and the appellants therefore without standing, we decline to consider it on the merits. This lawsuit was not initiated as a class action; and appellants have offered no persuasive evidence that there are present beneficiaries of the rule they ask us to adopt.

We do, of course, recognize that in certain extraordinary circumstances the barrier of mootness can be overcome. *See* Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Carroll v. Princess Anne, 393 U.S. 175, 178–179, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); United States v. W. T. Grant Co., 345 U.S. 629, 632–633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). However, in such cases the mootness of a case has been overlooked in order to allow the court to adjudicate a question which otherwise might repeatedly evade its review. In contrast, this Court of Appeals has had numerous opportunities to enunciate the appropriate relief for teachers illegally discharged when their school district implemented a desegregation plan. In each such case, this court has reiterated its approval of the "first vacancy" rule. *See,* most recently, United States v. Cotton Plant School District No. 1, 479 F.2d 671 (8th Cir. 1973). As a result we find no compelling circumstances justifying our disregard of the mootness of appellants' claim. Therefore, this is an inappropriate case for reconsideration of the remedial procedures outlined in Smith v. Morrilton, *supra.*

## II.  DAMAGES

■ Appellants seek compensation for travel expenses, living expenses, and other incidental expenses incurred in obtaining and keeping employment outside the Wheatley School District. We sustain the district court's denial of all such damages because we find them based on factual determinations which are not clearly erroneous.

In so doing, we first note that in Judge Harris' opinion of October 7, 1971, the Jacksons were awarded damages which included ten cents for each mile they traveled in their search for teaching positions outside the district.[9] On appeal, we upheld that determination with respect to the period prior to August 11, 1970, but remanded the case both for a computation of additional damages covering the period after August 11, 1970 and for findings on Mrs. Jackson's efforts to mitigate damages by attempting to secure "employment as a teacher in or near the community where the family lived." 464 F.2d 413–414. On that second remand, Judge Harris issued an order which awarded the Jacksons compensation for their post-August 11, 1970 salary losses but denied them, without explanation, all travel expenses incurred during that same period of time. We affirm that decision as one based on factual determinations which are not clearly erroneous; we are unable to find in the record before us any clear evidence of travel expenses actually in-

8.  *See* Lee v. Macon County Board of Education, 453 F.2d 1104 (5th Cir. 1971) and 456 F.2d 1371 (5th Cir. 1972).

9.  The court awarded Mrs. Jackson $436.40 because she had traveled 4,364 miles in seeking employment during the summer of 1968. She was not awarded any subsequent travel expenses because of the trial court's view, reversed on appeal, that she should have retained a job which would have required her to live apart from her spouse. *See* note 4 *supra.*

Judge Harris found that Mr. Jackson had failed to substantiate satisfactorily the exact number of miles he traveled in order to obtain his employment for the 1968–69 school year and for the two subsequent school years. As a result, although he had sought a greater amount, he was awarded only $250 for the travel expenses he incurred during the summer of 1968 in his efforts to find a teaching position.

curred by Mrs. Jackson while seeking employment within a reasonable distance of the family home after August 11, 1970.[10]

■ The Jacksons seek other consequential damages, *e. g.*, living and commuting expenses incurred as a result of their work outside the vicinity of their permanent home in Brinkley, Arkansas. In *Jackson II*, we sustained the trial court's refusal "to allow the Jacksons damages for expenses incurred by them in maintaining two households during the 1969–70 school year." 464 F.2d at 412. We find the consequential damages incurred by the Jacksons in subsequent years sufficiently similar to those denied for 1969–70 that the same legal conclusion must control both periods. Therefore, on the basis of *Jackson II*, we affirm Judge Harris' denial of such damages.

### III. ATTORNEYS' FEES

■ The Jacksons appeal from Judge Harris' grant of $500.00 attor-

neys' fees [11] and seek attorneys' fees for all legal work performed in connection with this lawsuit since its inception in 1968. Section 718 of the Emergency School Aid Act of 1972 authorizes the district court to allow a reasonable attorney's fee to the prevailing party, "in its discretion". 20 U.S.C. § 1617.[12] In *Jackson II*, we approved the trial court's computation of damages for the period prior to August 11, 1970. Attorneys' fees should ordinarily be allowed to the successful plaintiff unless special circumstances would render such an award unjust, Northcross v. Memphis Board of Education, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973). We have reviewed the record of the hearing and find no abuse of discretion in the amount awarded by Judge Harris for the post-August 11, 1970 period. *See* Kemp v. Beasley, 352 F.2d 14, 23 (8th Cir. 1965); Rogers v. Paul, 345 F.2d 117, 125–126 (8th Cir.), vacated and remanded on other grounds, 382 U.S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265 (1965).

Affirmed.

10. The only evidence in the record of the March 29, 1973 hearing relevant to this point is the following testimony by Mrs. Jackson on direct examination by counsel for the school district:

Q. Did you make any other trips in regard to these applications in 1970–71 except for those two?
A. Oh, yes, sir, many.

* * * * *

Q. But how many miles did you travel?
A. I believe in this particular case I travelled 597 miles altogether, one-way, you know.
Q. Five hundred-some-odd miles?
A. Yes, sir.

We cannot conclude from this testimony alone that Judge Harris' disallowance of damages was clearly erroneous because the record before us contains no evidence to persuade us either that these expenses were incurred after August 11, 1970 or that Mrs. Jackson's job applications were confined to a geographic area "in or near the community where the family lived." In the latter context, we note Judge Harris' comments during the March 29, 1973 hearing that "[T]he Circuit Court of Appeals made it very

strong in its statement that [Mrs. Jackson] was not required to go out to these far-reachings to seek employment under the circumstances because they used the term 'within a reasonable distance' . . . . "

11. *See* note 6 *supra*.

12. Emergency School Aid Act § 718, enacted June 23, 1972:

Upon the entry of a final order by a court of the United States against a local educational agency, a State (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of . . . the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, *the court, in its discretion*, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
(emphasis added)