Boston M. CHANCE and Louis C. Mercado et al., Plaintiffs,

v.

The BOARD OF EXAMINERS and the Board of Education of the City of New York et al., Defendants,

Council of Supervisors and Administrators of the City of New York, Local 1 Sasoc, AFL–CIO, Defendant-Intervenor.

No. 70 Civ. 4141 (MP).

United States District Court, S. D. New York.

Feb. 11, 1976.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Bd. of Examiners, by Howard A. Jacobson and Robert S. Ellenport, New York City.

Frankle & Greenwald, New York City, for intervenor-defendant Council of Supervisors and Administrators of the City of New York, Local 1, SASOC–AFL–CIO, by Max H. Frankle, Leonard Greenwald, and Gretchen White Oberman, New York City, of counsel.

## OPINION

POLLACK, District Judge.

This is the latest installment in an extensive pending litigation which has consumed the energies of the federal courts for nearly six years. The defendant Board of Education .(hereafter, the "Board") seeks a reconsideration of an order herein dated April 4, 1975 by former Judge Harold R. Tyler of this Court (now Deputy Attorney General of the United States) which ruled that plaintiffs were entitled to an award of attorneys' fees to be fixed herein for successful services rendered in this suit. The defendant Board relies on the Supreme Court's recent decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) for an order setting aside Judge Tyler's order and denying a fee award to the plaintiffs. In response, plaintiffs have cross-moved for leave to amend their complaint to add an additional ground for the allowance of fees, not previously available nor asserted heretofore. The Board has countered by objecting to the proposed amendment and has filed a motion challenging the sufficiency of the additional claim proposed.

Reconsideration of Judge Tyler's order is granted and upon such reconsideration this Court finds that the ruling should be adhered to for the reasons which appear hereafter. Plaintiffs' motion to amend the original complaint will be denied, however; and accordingly, the Board's motion challenging the sufficiency of the proposed amendment will be dismissed as moot.

Elizabeth B. DuBois (Legal Action Center of the City of New York, Inc.), George Cooper, Jack Greenberg, Jeanne R. Silver, New York City, for plaintiffs.

W. Bernard Richland, Corp. Counsel, New York City, for defendant Bd. of Ed., by Leonard Bernikow, Kew Gardens, N. Y. and Elliot P. Hoffman, Brooklyn, N. Y., of counsel.

*A. Background*

This civil rights class action, brought under 42 U.S.C. §§ 1981, 1983, challenged the examinations used to select principals and other supervisors in the New York City school system on the ground that the examinations discriminated against minority groups in violation of the Fourteenth Amendment. Extensive negotiations and court proceedings produced a consent judgment entered against the defendant Board of Examiners (hereafter, "Examiners") on July 12, 1973 and against the Board on March 25, 1975. The judgment prohibited the use of the challenged examinations, established an interim system for the selection of supervisors, and ordered the development of a permanent selection system based on non-discriminatory job-related examinations. A more detailed discussion of the suit may be found in *Chance v. Board of Examiners*, 458 F.2d 1167 (2d Cir. 1972). Subsequent proceedings in the case have focused on the effects of the judgment on an existing collective bargaining agreement between the Board and the Council of Supervisors and Administrators, intervenor-defendant, (hereafter, the "CSA") and on the Board's plan to "excess" supervisory personnel from eliminated positions on a "last-hired, first-fired" basis. As to the latter issue, the Court of Appeals has recently reversed an order of the District Court (Tyler, J.) which imposed racial quotas on the excessing process. *Chance v. Board of Examiners*, 534 F.2d 993, Civ.No. 75–7161, 7164, (2d Cir., 1976).

In his decision of April 4, 1975, Judge Tyler evaluated several distinct grounds for an award of counsel fees asserted by the plaintiffs and rested his decision on an "analogy to Title VII [of the Civil Rights Act of 1964] and on the private attorney general theory." *Chance v. Board of Examiners*, Civ.No. 70–4141 (HRT) (S.D.N.Y., April 4, 1975). The Board contends here that the decision of the Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), prohibits the award of attorneys' fees to plaintiffs in such cases, in the absence of specific statutory authorization for such relief and contends further that there is no such statutory authority here. Judge Tyler's reliance on the private attorney general theory rested in part on an award on that ground made by a District Court. However, that decision has subsequently been reversed by the Second Circuit on the authority of *Alyeska*. *Kirkland v. New York State Department of Correctional Services*, 520 F.2d 420, 430 (2d Cir. 1975).

The question this Court must decide on this motion for reconsideration, therefore, is whether there is a "specific and explicit" statutory provision for the allowance of counsel fees to the plaintiffs in this case. *Alyeska, supra*, at 260, 95 S.Ct. 1612. The plaintiffs contend that there are two such statutes. By moving to amend their complaint to allege a claim under Title VII, 42 U.S.C. § 2000e, they seek to render applicable that statute's authorization of an award of attorneys' fees to the prevailing party in a suit brought under that Title. 42 U.S.C. § 2000e–5(k). They also contend that, independently of an amended Title VII complaint, they are entitled to counsel fees by virtue of § 718 of the Emergency School Aid Act, 20 U.S. § 1617. The defendants contend that the latter statute is inapplicable to the present law suit, and that the motion to amend the complaint to assert a Title VII claim may not be properly granted at this stage of the litigation.

*B. Title VII*

Plaintiffs could not have alleged a Title VII claim when they first brought their action in 1970, since at that time the statute exempted state and local government agencies from its coverage. This exemption was deleted, however, effective March 24, 1972. Equal Employment Opportunity Act of 1972, Pub.L.No. 92–261, § 2, 86 Stat. 103.

While plaintiffs contend that a denial of their motion to amend the complaint at this time would exalt form over substance, it appears to be they who are seeking to do just that. The attorneys' fees provision of Title VII authorizes the

award of such fees to the prevailing party "[i]n any action or proceeding under this subchapter." The plaintiffs concede that they now wish to amend their complaint to state a Title VII claim for "the sole and only purpose" of clarifying their right to counsel fees; they do not seek any substantive relief under Title VII. Indeed, they could not do so, for the plaintiffs are enjoined in the consent judgment of July 12, 1973 from asserting any new claims "which might have been asserted against the defendants" in connection with the instant litigation.

Title VII and §§ 1981 and 1983 are "independen[t] avenues of relief" which are "separate, [and] distinct." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 460–61, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). By limiting the purpose of their proposed Title VII claim to the recovery of attorneys' fees, plaintiffs are clearly seeking such fees under Title VII for litigation in which substantive relief was granted under §§ 1981 and 1983. Yet that is precisely what *Alyeska* and *Kirkland, supra,* determined to be improper. Accordingly, the plaintiffs' motion to amend the complaint should be denied. Any analysis to the contrary in the original opinion awarding fees in this case may not withstand the teaching of those subsequent cases.

■ Moreover, plaintiffs have failed to comply with the variety of procedural requirements, involving a preliminary resort to the Equal Employment Opportunity Commission, which are "jurisdictional" prerequisites of maintenance of a civil action under Title VII in the federal courts. *See DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306 (2d Cir.) *modified on other grounds,* 520 F.2d 409 (2d Cir. 1975). It is true that a failure to observe such requirements may be excused in some circumstances, since the law does not require that plaintiffs engage in a "futile ceremony" or participate in a "charade." *DeFigueiredo v. TWA,* 322 F.Supp. 1384, 1387–88 (S.D.N.Y.1971); *Weise v. Syracuse University,* 522 F.2d 397 (2d Cir. 1975). If plaintiffs sought some substantial relief under Title VII,

therefore, it is possible that their failure to invoke the conciliation process of the EEOC would be overlooked in view of the fact that plaintiffs' litigation had long since been underway when Title VII first became available to them. That is not the case however; instead, plaintiffs are seeking the benefits of some of Title VII's procedures—the authorization of counsel fees—without having borne the burdens of the others. If there is any "charade" here, it is one proposed by plaintiffs. In these circumstances, there appears to be no compelling reason for the Court to excuse plaintiffs' failure to comply with the statutory scheme.

## C. 20 U.S.C. § 1617

■ Section 718 of the Emergency School Aid Act, 20 U.S.C. § 1617, provides that:

> Upon the entry of a final order by a court of the United States against a local educational agency, a State (or any agency thereof) . . . for failure to comply with . . . the fourteenth amendment to the Constitution of the United States as [it] pertain[s] to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Since plaintiffs' suit sought to redress a violation of the Fourteenth Amendment and was brought "for the purpose of correcting an underrepresentation of minorities in supervisory positions in the New York City school system," *Chance, supra,* 534 F.2d 993, Civ.No. 75–7161 (2d Cir., 1976), § 1617 appears applicable.

Nonetheless, the defendant Board of Education contends that this litigation does not "pertain to . . . education" in the sense Congress intended in enacting § 1617. The Board argues that Congress was primarily interested in actions to promote desegregation of schools, not suits against discrimination in employment by defendants who hap-

pen to operate educational facilities. Authorization for counsel fees in such employment suits, the Board alleges is within the exclusive province of Title VII.

It is true that many of the decisions granting counsel fees under § 1617 involve desegregation. *See, e. g., United States v. Board of School Commissioners,* 503 F.2d 68 (7th Cir. 1974), *cert. denied,* 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *Brewer v. School Board,* 500 F.2d 1129 (4th Cir. 1974); *Medley v. School Board,* 482 F.2d 1061 (4th Cir. 1973), *cert. denied,* 414 U.S. 1172, 94 S.Ct. 933, 39 L.Ed.2d 120 (1974). However, the Board concedes, as it must, that counsel fees have also been awarded under § 1617 to teachers and school supervisory personnel who have been discriminated against in regard to hiring, firing, and promotion. Nonetheless, the Board argues that such awards have been made only where the challenged employment practice was incident to the implementation of a desegregation plan, and were thus consistent with the Board's restrictive view of § 1617. *See, e. g., Ward v. Kelly,* 515 F.2d 908 (5th Cir. 1975); *Thompson v. Madison County Board of Education,* 496 F.2d 682 (5th Cir. 1974); *Jackson v. Wheatley School District No. 28,* 489 F.2d 608 (8th Cir. 1973) (Judge Moore of the 2d Circuit sitting by designation).

Even if that were the case, however, there seems little reason to distinguish among employment discrimination suits by teachers and principals on the basis that some follow on the heels of desegregation of a school district, and others do not. In *Armstead v. Starkville Municipal Separate School District,* 395 F.Supp. 304 (N.D.Miss.1975), for example, attorneys' fees were awarded under § 1617 in an employment discrimination case brought by teachers on facts which were very similar to those in *Chance.* The plaintiffs challenged the school board's policy of retaining only those teachers who achieved a certain minimum score on the Graduate Record Examination. The District Court found that the examination was not job related and had a racially discriminatory effect. Although the teachers' suit did follow a desegregation order, there is nothing in the text of § 1617 which would justify an award in *Armstead* but a denial in *Chance.*

It is conceivable that an employment discrimination suit brought by a single individual school employee might have insufficient impact on the educational process to warrant the application of § 1617. However, a suit properly brought as a class action by teachers or principals inevitably has a substantial effect on the representation of minorities in important roles in the schools, and therefore would appear to fall within the ambit of the statute. *See Morton v. Charles County Board of Education,* 373 F.Supp. 394 (D.Md.1974) (fees awarded under § 1617 in employment discrimination suit by single principal where litigation helped eliminate racially identifiable faculty); *Aspira of New York, Inc. v. Board of Education,* 65 F.R.D. 541 (S.D. N.Y.1975) (fees awarded for suit challenging lack of bi-lingual school instruction; limitation of § 1617 to desegregation suits expressly rejected).

Since neither the text of the statute nor the precedents which have applied it suggest that the instant case should be excluded from its coverage, the narrow construction of § 1617 favored by the defendant Board should be sustained only if it is compelled by the legislative history, as the Board contends. The provision had its genesis as § 11 of S. 1557, 92d Cong., 1st Sess. (1971), a bill which was in large part enacted into law as part of the Education Amendments of 1972.[1] While there was considerable dis-

---

1. Section 1617 was enacted as § 718 of the Emergency School Aid Act, which in turn was approved by Congress as part of the Education Amendments of 1972, Pub.L. No. 92–318, 86 Stat. 235. There was apparently no discussion of the attorneys' fees provision on the floor of either House of Congress when the measure was passed in the spring of 1972, and the committee reports are similarly devoid of analysis, H.Rep. 92–554, 92d Cong., 1st Sess. (1971), S.Rep. 92–604, 92d Cong., 2d Sess. (1972), U.S.Code Cong. & Admin.News 1972,

cussion and analysis of § 11 by the Congress to which this Court may look for guidance in the interpretation of §`1617, it is far from conclusive, and in any event, does not sustain the position adopted by the defendant Board.

The attorneys' fees provision was included as a part of a legislative proposal to provide financial assistance to school districts which were involved in the desegregation process. Hence, much of the floor debate on the amendments which were made in the Senate to delete the provision and then restore it in modified form concerned its application in school desegregation suits.[2] Nevertheless, there is no indication that the senators intended the provision to be limited to such suits. Indeed, one senator based his opposition to the provision in part on the ground that it "contains no language to control the kinds of suits brought by private attorneys" and "fails to control or delineate the scope of coverage." S.Rep. 92–61, 92d Cong., 1st Sess. (1971) at 61–63 (individual views of Mr. Dominick). Another senator who supported the measure explained that

This amendment says one very simple thing. It says that if it is necessary to bring an action by reason of the violation of . . . the fourteenth amendment to the Constitution of the United States . . . the school board should be compelled to pay those attorney's fees and costs . . . . 117 Cong.Rec. 11527–28 (1971) (remarks of Sen. Cook).

Finally, the report on S. 1557 of the Senate Committee on Labor and Public Welfare, the most reliable source of congressional intent on the measure, indicated that the provision was designed to insure "vigorous nation-wide enforcement of Constitutional and statutory protection against *all forms* of discrimination based upon race, color and national origin in elementary and secondary education." S.Rep. 92–61, 92d Cong., 1st Sess. (1971) at 25 (emphasis added). Thus, while the primary purpose for the enactment of § 1617 may have been to allow the award of attorneys' fees in school desegregation cases, it is clear that Congress did not intend to limit the application of the provision to such suits.[3]

p. 2462. The report of the conference committee does describe the provision, but sheds no light on the issue before the Court. S.Conf. Rep. 92–798, 92d Cong., 2d Sess. (1972), U.S. Code Cong. & Admin.News 1972, p. 2462.

**2.** As reported from the Senate Committee, § 11 of S. 1557 provided for attorneys' fees to be awarded to plaintiffs in language almost identical to that enacted in § 1617; however, it also provided that such fees would be paid by the federal government, not the defendant school boards, and it authorized a fund of $15-million to accomplish that purpose. The Senate passed an amendment to delete § 11 entirely on April 21, 1971, 117 Cong.Rec. 11345 (1971), but restored it two days later without the provision for federal funding of counsel fees, 117 Cong.Rec. 11726 (1971).

An analogous attorneys' fees provision was also included in H.R. 2266, the House counterpart to S. 1557, which was reported from the House committee on October 19, 1971. While eventually enacted as part of the Education Amendments of 1972, that bill was initially defeated by the House on November 1, 1971 after a debate in which the attorneys' fee provision played a minor role. 117 Cong.Rec. 38493 (1971).

**3.** The defendant Board of Education notes that § 1617 was enacted in 1972 some three months after Title VII of the Civil Rights Act was amended to extend its coverage to employees of government agencies and educational institutions. It contends that the award of attorneys' fees in employment discrimination suits against schools was therefore already authorized prior to the passage of § 1617, and that Congress should not be deemed to have legislated redundantly. Accordingly, the Board argues that the timing of the two statutes supports its restrictive reading of § 1617.

The Board overlooks that at the time each measure was reported from committee—and the committee report is the most reliable indicium of congressional intent—neither had been enacted into law, and that, in fact, the predecessor of § 1617 had already passed the Senate before the relevant Title VII amendments were first reported from committee in the 92d Congress. 117 Cong.Rec. 11726 (April 23, 1971) (Senate approves attorneys' fees amendment to S. 1557); H.Rep. 92–238, 92d Cong., 1st Sess. (June 2, 1971) (first committee report in 92d Cong. on Title VII amendments).

Under this interpretation of the statute, the plaintiffs are entitled to a reasonable attorneys' fee. The defendants Board and Examiners are local educational agencies and state agencies, and the consent judgment constitutes a final order against them which arose from their failure to comply with the Fourteenth Amendment as it pertains to elementary and secondary education. Court proceedings were necessary to bring about that compliance. While § 1617 provides that an award remains in the discretion of the Court even where all these criteria are met, the Supreme Court has established that the allowance is essentially automatic " 'unless special circumstances would render such an award unjust.' " *Northcross v. Board of Education,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973). No adverse special circumstances have been brought to the Court's attention in this case. There is no question that § 1617 authorizes the award of fees for work which antedated its enactment, where the fee application had not been finally determined prior to that date. *Bradley v. School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

Defendants are liable to the plaintiffs for counsel fees only in connection with the matters on which they prevailed in the litigation. Plaintiffs produced the consent judgment against the defendants Board and Examiners, and procured the clarification of that judgment in regard to the filling of supervisory vacancies by the transfer of other personnel. *Chance v. Board of Examiners,* Civ. No. 70–4141 (WRM), 7 Emp.Prac.Dec. ¶ 9084 (S.D.N.Y., 1973). Plaintiffs have not prevailed in regard to the excessing issue.

■ Finally, it is necessary to clarify the liability of the intervenor-defendant CSA for plaintiffs' counsel fees. CSA has acted in the role of *amicus curiae* throughout most of this litigation, in part because plaintiffs "strenuously resisted," as the plaintiffs phrase it, CSA's several motions to intervene. Plaintiffs may not now turn around and assert liability against CSA as if it had been an intervenor from the onset of the litigation. Plaintiffs have cited no authority for an award of attorneys' fees against an *amicus curiae,* and this Court will provide none.

■ Moreover, CSA may not be held liable for attorneys' fees to plaintiffs for the brief period during which CSA was granted intervenor status and plaintiffs were the prevailing parties, for § 1617 does not authorize such liability. While the statute may not speak precisely to the issue, it is apparent that it authorizes the award of fees against local educational and state agencies, not against private parties. *See McCrary v. Runyon,* 515 F.2d 1082, 1090 (4th Cir.), *cert. granted,* 423 U.S. 945, 96 S.Ct. 354, 46 L.Ed.2d 276, 44 U.S.L.W. 3271 (Nov. 11, 1975). Although fees were awarded against a city council under § 1617 in *Northcross v. Board of Education,* 489 F.2d 19 (6th Cir. 1973), *cert. denied,* 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974), the Sixth Circuit Court of Appeals had authority for that award independent of § 1617, and the city council there had acted to prevent the local educational authority from complying with the lawful orders of the Court.

The motion of defendant Board of Education to strike the award heretofore made of attorneys' fees to plaintiffs is thus denied. The plaintiffs' motion to amend the complaint is denied, and the cross-motion of defendant Board of Education to dismiss the amended complaint is moot. A reasonable fee for plaintiffs' attorneys will be determined and awarded herein upon an evidentiary hearing of the relevant facts. Plaintiffs' application therefor, fully documented, should be completed and served on defendants who may have documentary discovery and take any desired appropriate depositions upon informal notice and request therefor, the same to be completed within 60 days hereof. The date for the hearing will be fixed upon advice to the Court that the parties are ready to proceed therewith.

So ordered.