Martin J. SCHERIFF, Plaintiff,

v.

Richard BECK and Darrell
Wright, Defendants.

Civ. A. No. 76–F–403.

United States District Court,
D. Colorado.

June 9, 1978.

Ira M. Karet, Glenwood Springs, Colo., for plaintiff.

Clifford L. Neuman, G. Lane Earnest, Boulder, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER AWARDING FEES AND OTHER COSTS

SHERMAN G. FINESILVER, District Judge.

THIS MATTER is before the court on various post-trial motions of the parties for an award of costs and attorney fees in this civil rights, 42 U.S.C. § 1983, action. The motions raise interesting questions under both the 1976 attorney fees amendment to 42 U.S.C. § 1988 and Rule 68 of the Federal Rules of Civil Procedure dealing with offers of judgment.

## I

Defendants are residents of Jamestown, Colorado, a small rural community in Boulder County, Colorado. Defendant Beck is the town marshal. He is the only law enforcement officer employed by Jamestown. Defendant Wright serves on the Jamestown Board of Trustees and is town building inspector. Plaintiff alleged in his complaint that on June 16, 1974 defendants abridged his civil rights in violation of 42 U.S.C. § 1983 by (1) effecting an unlawful arrest, (2) using excessive force during an arrest, and (3) making false statements to Boulder County deputy sheriffs which supported the illegal arrest on false charges. Defendant Beck made a general denial and counterclaimed for assault and battery. Defendant Wright made a general denial, denied that he was acting under color of state law when the events took place, and counterclaimed for assault and battery. Defendant Wright also counterclaimed for intentional infliction of emotional distress. Wright argued that the June 16 altercation which gave rise to plaintiff's suit was precipitated by plaintiff's outrageous conduct on that day and throughout the several months prior to June 1974.

The jury found that Wright was not acting under color of law on June 16, 1974 and therefore, that he did not violate § 1983. The jury denied Wright's counterclaims for assault and battery but did find that plaintiff had intentionally inflicted emotional distress upon Wright and awarded him $500.00. As to Marshal Beck the jury determined that he had violated plaintiff's civil rights by making false statements to Boulder County deputy sheriffs and awarded plaintiff $500.00. Beck's counterclaims for assault and battery were denied.

The trial in this case, which commenced on May 2, 1978, consumed five days. On July 13, 1977 Marshal Beck served on plaintiff an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. The offer provided, in part, "Richard Beck . . . hereby offers to allow judgment to be taken against him, in this action in the amount of $2,200.00 together with costs, not including attorney's fees, incurred to date." In addition to serving the offer on plaintiff, a copy of the offer was filed with the court. As noted above, plaintiff was ultimately awarded only $500.00 against Marshal Beck.

On November 17, 1977 defendant Wright served on plaintiff an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. Wright's offer provided, in part, "Darryl [sic] Wright . . . herewith makes an offer upon plaintiff to allow judgment to be taken by the plaintiff and against defendant Wright . . . in the amount of $10.00, inclusive of costs, interest, and attorney's fees." Wright's offer was not then filed with the court but was served on plaintiff only. The jury ultimately vindicated Wright of any wrongdoing and awarded him $500.00 against plaintiff on a counterclaim. Thereafter, Wright filed his offer of judgment with the court as an attachment to his motion for an award of fees.

## II

We first consider an award of fees as it relates to defendant Wright. The 1976 amendment to 42 U.S.C. § 1988 (the Civil Rights Attorney's Fees Act of 1976) provides in relevant part:

In any action or proceeding to enforce a provision of sections [42 U.S.C. §§ 1981–1983, 1985, 1986] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The language of § 1988 follows *verbatim* the text found in other civil rights attorney fee provisions. This is not coincidental. As noted in the legislative history, U.S.Code Cong. & Admin.News 1976, pp. 5908, 5909, 5910, the amendment "follows the language of Titles II and VII of the Civil Rights Act of 1964," and is designed to "allow courts to provide the similar remedy of reasonable counsel fees to prevailing parties." Other courts, including this one, have noted the dependence of § 1988 interpretation upon the fee award provisions of the housing and

employment discrimination statutes. *Wharton v. Knefel,* 562 F.2d 550, 557 (8th Cir. 1977); *EEOC v. Bailey Co.,* 563 F.2d 439, 456 (6th Cir. 1977); *Keyes v. School Dist. No. 1,* 439 F.Supp. 393, 399 n. 9 (D.C. Colo.); *cf. Bradley v. Richmond School Bd.,* 416 U.S. 696, 719, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1976).

■ The civil rights fee statutes are worded neutrally. That is, they provide for an award of fees in the court's discretion to the *prevailing* party, be that party plaintiff or defendant. In interpreting the statutes, however, the plain language of legislative scheme has been overshadowed by reference to the legislative intent as it impacts on the exercise of the court's discretion. Thus a dual standard has evolved, one for prevailing plaintiffs and another for prevailing defendants. This interpretation has had the implicit support of Congress when it enacted the 1976 amendment knowing the full import of court interpretations on the prior fee statutes. As will be discussed later, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

■ When a prevailing defendant is involved the standard is different. Recently the Supreme Court reviewed the standard for an award of attorney's fees to a prevailing defendant in a civil rights action. *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The court there ruled that in employment discrimination cases (42 U.S.C. § 2000e *et seq.*) a prevailing defendant could recover his attorney's fees when plaintiff's action is found to be "unreasonable, frivolous, meritless or vexatious." It should be noted that the list is stated in the disjunctive. Thus, there is no need to show bad faith (or vexatiousness) on the part of plaintiff in order for a defendant to recover his fees.

In this case, in order to award fees to prevailing defendant Wright the court must determine whether plaintiff's unsuccessful civil rights claims against defendant Wright were unreasonable, frivolous, meritless or vexatious. The task is considerably simplified by the jury's decision that plaintiff intentionally inflicted emotional distress upon Mr. Wright.

One of the few things upon which all counsel agreed was that this lawsuit did not spring full blown out of the June 16, 1974 shoving match among plaintiff and defendants. The June 16 incident (in which the only physical injury was a minor scratch on Marshal Beck's arm) was merely one in a series of confrontations between plaintiff and defendant Wright. Evidence at trial indicated that hard feelings between plaintiff and defendant Wright developed some years before over a disagreement concerning the location of the Jamestown garbage dump and plaintiff's desire to dispose of some trash. Plaintiff argued that after this disagreement residents of Jamestown labeled him a troublemaker and attempted to keep him out of town. Defendants Beck and Wright argued that there was no town scheme against plaintiff. They contended that plaintiff was a maladjusted youngster who raised the dump incident out of proportion, and threatened the well-being of various Jamestown residents who were involved. Defendants introduced evidence of plaintiff's admitted plan to harass Wright and others, threaten their safety and ruin their lives through the institution of financially draining lawsuits. During the course of the trial, evidence was presented that plaintiff, whenever near Wright or a member of his family, taunted the individual in an extremely insulting, crude and vile manner. Plaintiff reserved some of the most base and ugly epithets for Wright's wife and son, and then "dared" the son "to do something about it."

The court ordinarily would discount evidence of a person's "intent" to file lawsuits for the purpose of destroying the savings of the defendant. In this case, however, that intent was proven out of plaintiff's own mouth, and unfortunately, this is not the first lawsuit in which that intent was revealed. In the pleadings of this action are the findings of fact and conclusions of law

of a state judge in a prior lawsuit by plaintiff against another person present at the dump incident.[1] Among the findings are that plaintiff devised and admitted to others a plan of revenge against those present at the dump. The state judge found that in carrying out this plan plaintiff engaged in several and repeated acts of harassment including threatening and "obscene" gestures, and tailgating and bumping the state court defendant's automobile. The state court judge also found that after such an incident on a mountain road plaintiff committed a battery against the state defendant by grabbing him in the crotch area. When the state defendant responded by striking plaintiff with a tool handle plaintiff stated that he "had him now" and would see the person in court, which of course happened.

The evidence in this case also revealed a pattern of gross misconduct by plaintiff involving the use of filthy language to men, women, and entire families, coupled with threats of harm to those families. As in the state court case, plaintiff's object included the infliction of mental distress with the hope of enticing the victims into conduct which would serve as the foundation of a lawsuit.

■ After hearing the evidence of plaintiff's infantile action the jury found that plaintiff had intentionally inflicted emotional distress upon defendant Wright. In so finding, the jury implicitly concluded that plaintiff's conduct was so extreme and outrageous that an average member of the community would regard it as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community. *Colorado Jury Instructions (Civil)* § 27:2 (1976 Supp.). Even had the jury found that plaintiff's conduct did not amount to the unconscionable conduct required to establish a claim of intentional infliction of emotional distress, this court would find that plaintiff brought this lawsuit in bad faith, unreasonably, and for vexatious reasons. Under the standard recently approved in *Christianburg Garment Company, supra,* Wright, as a prevailing defendant, is entitled to recovery of his costs including attorney's fees.

■ Moreover, we shall award Wright a reasonable fee for both his defense of the civil rights action and for the prosecution of his common law counterclaim. We do so for two reasons. First, given counsels' agreement that exposition of the entire relationship between plaintiff and defendant Wright was necessary for a complete presentation of plaintiff's claims and the defenses thereto, it would be impossible to accurately segregate those fees engendered for the defense and those for the prosecution of the common law counterclaims. Second, as an equitable matter, "We have long recognized that attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F. D. Rich v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Accord, Runyon v. McCrary,* 427 U.S. 160, 183, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). This lawsuit was instituted vexatiously as part of a continuing plan to involve Mr. Wright in an expensive protracted lawsuit. Although plaintiff failed in his attempt to inflict liability, he has succeeded in his wanton attempt to involve Wright, a private citizen, in an expensive two-year proceeding. The court has the authority to rectify this abuse and we do so. We shall award defendant Wright his fees and costs.

### III

Plaintiff has prevailed in his civil rights claim that Marshal Beck made false statements to Boulder County deputy sheriffs which resulted in plaintiff's arrest. We have previously denied defendant Beck's motion for a judgment notwithstanding the verdict. Although the motion was a close

---

1. See exhibit to Defendants' Joint Motion for Mental Examination of Plaintiff, filed January 18, 1977. The state court opinion was not admitted into evidence but we review it as part of the court's case file for the purpose of exercising our discretion with respect to an award of attorney fees.

one, the court is not able to say that *all* the evidence in the case points toward Beck's innocence and there are *no* reasonable inferences to sustain the verdict. *Moore v. Shultz,* 491 F.2d 294, 298 (10th Cir.), *cert. denied,* 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974). Thus, we accept the jury's finding and consider plaintiff a prevailing party against defendant Beck.

■ Under § 1988 plaintiff is not entitled to attorney's fees expended in pursuit of his claims against both defendants, but only sums expended against defendant Beck. Plaintiff's claim of false statements could have easily been segregated from his claims against defendant Wright. Plaintiff has not suggested an appropriate method of division of his fees engendered against the defendant over whom he prevailed. Where, as here, plaintiff prevailed as to only one of two defendants and has demonstrated no way in which to apportion his time, the court will simply cut the fee request by one-half.

■ Considering the halved fee request, we recognize the rule in the Tenth Circuit that "when a party has prevailed in a court action . . . he may be entitled to attorney's fees proportionate to the extent of his recovery." *Pearson v. Western Electric Co.,* 542 F.2d 1150, 1153 (10th Cir. 1976).[2] *Accord, Williams v. General Foods Corp.,* 492 F.2d 399 (7th Cir. 1974); *Schaeffer v. San Diego Yellow Cabs, Inc.,* 462 F.2d 1002, 1008 (9th Cir. 1972); *Armstead v. Starkville Mun. Sep. School Dist.,* 395 F.Supp. 304 (N.D.Miss.1976); *Chance v. Board of Examiners,* 70 F.R.D. 334 (S.D.N.Y.1976). Applying the proportionate recovery rule plaintiff's fee request must again be reduced. Plaintiff was permitted to present three separate civil rights claims to the jury and recovered only on one. Any recovery granted should take into account this disparity. *See Keyes v. School Dist. No. 1, supra,* 439 F.Supp. at 400.

■ Finally, any fee awarded under § 1988 is awarded "as part of the costs." *Cf., Christianburg Garment Co., supra,* 98 S.Ct. at 701 n. 20. There is no entitlement to attorney fees independent from the award of costs under the civil rights fee statutes. In this case the award of costs is effected by the offer of judgment submitted to plaintiff by Marshal Beck in advance of trial under Rule 68 of the Federal Rules of Civil Procedure.

Rule 68 permits a party to prevent liability for further costs by making an offer of judgment to a party asserting a claim. If the offer is not accepted within 10 days it is considered withdrawn and may not thereafter be accepted. If the offer is not accepted and the eventual recovery is less than the offer, the offeree may not recover any of his own fees incurred after the date of the offer and must pay the subsequent costs incurred by the offeror. *See, Perkins v. New Orleans Athletic Club,* 429 F.Supp. 661 (E.D.La.1976); *Staffend v. Lake Central Airlines,* 47 F.R.D. 218 (N.D.Ohio 1969); *Honea v. Crescent Ford Truck Sales, Inc.,* 394 F.Supp. 201 (E.D.La.1975); 3 Barron & Holtzoff, *Federal Practice and Procedure* § 1471; 7 *Moore's Federal Practice* ¶ 68.02.

■ In this case Marshal Beck served on plaintiff an offer of judgment on July 13, 1977 "in the amount of $2,200 together with costs, not including attorney's fees, incurred to date." Plaintiff did not accept the offer and eventually recovered only $500. Plaintiff has moved to strike the offer on the ground, *inter alia,* that it was filed with the court at the time it was extended. When such a procedural error is made, however, the only corrective action which need be taken is to strike the early filing. *Nabors v. Texas Co.,* 32 F.Supp. 91 (W.D.La.1940); 7 *Moore's Federal Practice* ¶ 68.04.

■ Neither is it important that the offer is stated in terms of costs "incurred" rather than the language of the Rule; *i. e.,* costs "accrued." All that is necessary is that the language be clear so that all par-

---

2. The proportionate recovery rule is distinct from an initial finding of entitlement to fees. It is not required that a party prevail on all issues

presented to be entitled to *some* amount of attorney's fees. *See, Keyes v. School Dist. No. 1, supra,* 439 F.Supp. at 399.

ties and the court can easily understand that costs to the date of the offer are included. *Cruz v. Pacific American Ins. Co.*, 337 F.2d 746 (9th Cir. 1964).

Plaintiff also contends that the offer is fatally defective because it excludes attorney's fees then accrued. We agree. Rule 68 requires that an offer of judgment include payment of costs then accrued. In civil rights actions attorney's fees can constitute part of the costs. Rule 68 does not permit an offeror to choose which accrued costs he is willing to pay. Thus, the offer of judgment is invalid and Marshal Beck will not be awarded his costs which accrued after the date of the offer of judgment.

While we would normally apply the proportionate recovery rule, we need not do so here. In this case, in the exercise of our discretion, the court has decided to withhold any award of fees in favor of plaintiff. As stated by the Supreme Court in *Newman v. Piggie Park Enterprises, supra*, and re-stated in *Christianburg Garment Company, supra*, 98 S.Ct. at 698, that

> It can thus be taken as established, as the parties in this case both acknowledge, that . . . a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances. (emphasis in original)

It is recognized that in some cases, while a plaintiff may sustain his claim of civil rights violations, an attorney's fee award is simply not appropriate. Such a case was *Sprogis v. United Airlines, Inc.*, 517 F.2d 387 (7th Cir. 1975). There plaintiff ostensibly brought suit against the airline for violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, through the employers no marriage rule. The district court had awarded plaintiff $10,408 and thereafter, plaintiff filed an application for $45,000 in attorney's fees. The court denied the application on a variety of grounds, including the fact that plaintiff was not the real party in interest (the real party having already reached a "class action accord" with the airline), that the precedential value of the suit was limited, that the suit was not of the type envisioned by Congress in passing the underlying legislation, and that the claim for fees was not proportionate to the recovery.

This case is a much more obvious example of the special circumstances mentioned by the Supreme Court than is *Sprogis*. Here the civil rights violation was precipitated by an irrational, deliberate scheme to involve Darrell Wright in some type of litigation. Plaintiff engaged in conduct over several months that cannot be considered to be anything but outrageous. His fee and cost request is some forty times the amount of his recovery. If the phrase "special circumstances" has any application to a prevailing plaintiff in any case, it applies here. Plaintiff's motion for an award of fees and costs will be denied.

### IV

Defendant Beck has requested an award of fees notwithstanding the fact that he did not prevail at trial. The court denies the request.

### V

In reviewing Mr. Wright's Bill of Costs and attorney fee request the court has considered all those factors appropriate to a civil rights fee award mentioned in *Keyes v. School District No. 1*, 439 F.Supp. 393, 402 (D.Colo.1977). A brief recitation of that review follows.

*Nature and extent of objection to allowance.* Except for the fact that plaintiff does not believe Wright is entitled to fees, plaintiff has made no objection to the fee request as to rate of pay or items listed.

*Magnitude, complexity, and novelty of the litigation.* The parties recognize that this case breaks no new ground nor establishes precedent. It was not a case of great magnitude, complexity or novelty.

*Benefit achieved.* Mr. Wright was vindicated of any wrongdoing.

*Quality of legal services.* Mr. Wright's representation reflected the highest tradition of the bar as to competence and preparation.

*Fee arrangement.* Counsel was retained at a set hourly rate.

*Time and effort expended by counsel.* An affidavit detailing some 184.4 hours of attorney time has been tendered. This is reasonable without doubt.

*Awards in similar cases.* This court tends to be frugal in awards of attorney's fees. For example, in the massive *Keyes* desegregation case the highest fee awarded was $45 per hour. Some fee awards have been as low as $5 per hour. *Spero v. Abbott Laboratories*, 396 F.Supp. 321 (N.D.Ill.1975). The Tenth Circuit Court of Appeals has approved an award of $12 per hour. *Brito v. Zia*, 478 F.2d 1200 (10th Cir. 1973). *See generally, Keyes, supra,* 439 F.Supp. at 413 n. 26.

In the context of this case an award of $35 per hour is reasonable and adequate. Counsel has listed 184.4 hours expended in pursuit of this litigation. We award Mr. Wright $6,454 for attorney's fees. Mr. Wright has also listed some $558.35 in other costs. In our discretion we so award that amount.

The last item is $198 requested for reimbursement for expenses incurred in connection with the work of law clerks. This court has consistently distinguished between the work of attorneys and law clerks. The fee award statute refers only to attorney fees. It does not include any mention of fees for law clerks or expenses connected with secretaries or other office overhead. Under the civil rights fees statutes the court cannot award any sums for the work of law clerks or paralegal assistants.

In sum, we award to defendant Wright and against plaintiff Scheriff $7,012.35 which includes $6,454 for fees taxed as costs under 42 U.S.C. § 1988 and $558.35 for other allowable costs.

## VI

During the course of this trial the court heard testimony from many residents of Jamestown, Colorado and the surrounding communities. The animosity between Martin Scheriff and many of the witnesses is strong; perhaps indelible. This case represents an unfortunate relationship among individuals which should never have drawn the attention and intervention of the federal courts. The dispute here is personal. The relatively small sums awarded by the jury indicate that in the general scheme of things, the affair was minor and should never have happened. Good sense among intelligent, if unfriendly, people should have prevailed. The argument should have been resolved within the community or in some forum other than the courts—that it did not is unfortunate.

The result of this lawsuit has been aggravation and expense which greatly added to the general disharmony among the parties. Billable attorney's fees and costs in this case exceed $36,000,[3] which considering the nature of the lawsuit (a shoving match resulting from a dispute over a trash dump) is patently outrageous. Plaintiff is yet a young man and, as we learned during the trial, is soon to be married. Defendants are responsible members of their community. While common sense has not been the hallmark of their relationship thus far, the court sincerely hopes that this case will be the last chapter in the quarrel. The parties should resolve if not to be peaceable neighbors, to at least no longer antagonize one another. All the participants in this lawsuit, both family and friends, should consider their responsibility to end further animosity.

---

**3.** Plaintiff has requested an award of $16,248; defendant Wright requested $9,418; defendant Beck notes billable fees at $10,264 (but has billed his client at ½ rate since Beck was to be reimbursed by a governmental entity). Cost requests total some $3,000.