Dana J. GREENWOOD

v.

Robert L. STEVENSON, Alias John Doe et als.

Civ. A. No. 77–0090.

United States District Court,
D. Rhode Island.

Oct. 20, 1980.

Lawrence L. Goldberg, Robert D. Goldberg, Pawtucket, R. I., for plaintiff.

Joseph F. Penza, Jr., Gerard DeCelles, Providence, R. I., for defendants.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

Under Rule 68 of the Federal Rules of Civil Procedure, a defending party may, at any time more than ten days prior to trial, serve on the opposing party an offer of judgment. Such an offer, which must be an unconditional and definite proposal that includes the payment of "accrued costs", represents a formidable settlement tactic. If the recipient rejects the offer and then fails to win a judgment in an amount exceeding that which was proposed, all costs accruing after the date of the offer must be taxed to the recipient, even though he or she is technically the prevailing party in the litigation. The case at hand raises two important, but infrequently encountered, questions about the operation of Rule 68. First, when does the trial "begin" for purposes of fixing the cutoff date for tendering a valid Rule 68 offer? Second, does the required inclusion of "accrued costs" encompass attorney's fees when the offer is made in settlement of a civil rights action?

The plaintiff's complaint, founded on 42 U.S.C. § 1983, alleges numerous violations of his civil rights arising out of an incident in early February, 1976. According to the plaintiff, defendant Stevenson, a member of the City of Providence Police Department, illegally searched and seized plaintiff's car and person, "violently assaulted and abused plaintiff," and, ultimately, shot plaintiff in the back. Plaintiff alleges a conspiracy on the part of several members of the Providence police force to falsify reports and otherwise cover up the incident. He also contends that the City of Providence failed adequately to train and supervise the individual officers involved. In addition to these charges of intentional deprivations of plaintiff's civil rights under § 1983, the complaint includes a count in negligence as a pendant claim. Defendants have denied the allegations.

Early in the discovery process, defendants made an offer of judgment in the amount of $5,001. When plaintiff rejected that proposal, discovery continued and eventually the offer was raised to $15,001. Still plaintiff did not accept. The case worked its way toward trial and, on April 2, 1980, a jury was impanelled. Because of the exigencies of pending criminal cases, a trial date of June 1 was anticipated.

On May 21, 1980, counsel for defendants transmitted to the plaintiff an "Offer of Judgment" reading:

> The defendants in the above entitled action offer to allow judgment to be taken against them by the plaintiff Twenty Thousand and One ($20,001.00) Dollars [sic] with costs now accrued.

In an accompanying letter, counsel for the individual defendants offered an additional $5,000, contingent on the approval of the Committee of Claims for the City of Providence. He represented in that letter that counsel for the City concurred in recommending to the Committee the added contribution by the City. Nine days later on May 30, plaintiff's counsel served on defendants' counsel and filed with the Court a document denominated "Acceptance of Offer of Judgment". It read:

> Now comes the plaintiff in the above-entitled cause, pursuant to FRCP 68 and Title 42 USC § 1988 and accepts defendants' Offer of Judgment with costs now accrued, which is attached hereto and incorporated herein, labeled Exhibit "A", and accepts the offer of Five Thousand Dollars made by counsel in the defendants' letter of May 21, 1980 which is attached hereto and incorporated herein and labeled Exhibit "B". Plaintiff requests the Clerk of the Court to enter judgment as required by FRCP 68 plus interest from the date this action accrued, plus costs including attorneys' fees as provided by 42 USC 1988 which are to be submitted by Affidavit of plaintiff's counsel.

This produced a rather perplexing response from defendant City of Providence which, on June 4, filed the following Objection:

Now comes the City of Providence, Defendant in the above–entitled action and objects to Plaintiff's "Acceptance of Offer of Judgment" in that the said City of Providence at no time made any offer of Judgment pursuant to F.R.C.P. 68, nor any settlement offer; Defendant only offered to *recommend* settlement to the Claims Committee of the City Council, in the event that the *entire* potential fiscal liability of the City of Providence and the *entire* case would be resolved thereby.

Up to this point, defense attorneys for the City and the individual officers had been working in concert. As it was not entirely clear whether the City was now pursuing its own different strategy, or whether there was a blanket objection to plaintiff's "Acceptance" by all defendants, this Court called a conference on June 18, 1980. What finally emerged was defendants' vigorous objection, in unison, to plaintiff's attempt to fit attorney's fees within the parameters of their Offer of Judgment. To prevent the entry of a judgment which includes fees, defendants have advanced two main objections. The first goes to the validity of the Offer itself. Asserting that a trial "begins" with the impanelling of a jury, defendants argue that an offer made over fifty days after jury selection was not rendered "more than ten days before the trial begins," and therefore could not be timely under Rule 68. The second objection focuses on the term "accrued costs". Defendants maintain that, while they are quite willing to pay those items traditionally labeled "costs", they never intended to include attorney's fees under that heading. As a corollary, they argue that the legal meaning of "costs" does not include fees, so that they cannot be deemed as a matter of law to have "intended" to offer attorney's fees. In sum, this second objection casts the whole interchange in contract terms: defendants made an "offer", plaintiff made

a "counteroffer", and there was never the essential "meeting of the minds".

Both objections raise interesting questions about the construction and underlying policies of Rule 68, and they will be considered in turn.

*The Timeliness of the Offer*

■ Although the federal courts have been fairly strict in applying Rule 68's ten–day time limit, *see, e. g., Home Insurance Co. v. Kirkevold*, 160 F.2d 938, 941 (9th Cir. 1947); *Staffend v. Lake Central Airlines, Inc.*, 47 F.R.D. 218, 220 (N.D.Oh.1969); *FDIC v. Fruit Growers Service Co.*, 2 F.R.D. 131, 133 (D.Wash.1941), this Court has not discovered a single case defining when a trial "begins" for purposes of applying the ten–day rule. Plaintiff argues that the ten day period is measured from the actual convening of the trial, while defendants insist that a jury trial formally commences when the jury is impanelled.

In several other contexts, the federal rule seems to be that jury selection marks the official beginning of a trial. A criminal defendant's right to be present during trial attaches at the point when the jury is being chosen. *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). Similarly, double jeopardy attaches with the impanelling of a second criminal jury. *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Once a state court starts to impanel a jury, the trial has "begun" and removal to the federal court is foreclosed. *United States ex rel. Walker v. Gunn*, 511 F.2d 1024 (9th Cir. 1975).[1]

In none of these cases has it been suggested that there is anything mystical about the process of jury selection, such that impanelling inherently and necessarily marks the beginning of the trial. Rather, the choice of impanelling as a measuring point has always reflected an accommodation of policy and practicality. For exam-

---

1. Several state cases have also marked selection of the jury as the formal beginning of trial for various purposes. *See, e. g., Kadota v. San Francisco*, 166 Cal.App.2d 194, 333 P.2d 75 (1958) (calculating time for purpose of dismissal for failure diligently to prosecute action);

*Wilhite v. Agbayani*, 2 Ill.App.2d 29, 118 N.E.2d 440 (1954) (proper timing for dismissal without prejudice); *Caples v. State*, 3 Okl.Cr. 72, 104 P. 493 (1909) (proper timing for motion to change venue in criminal case.

ple, the Supreme Court recognized that a criminal defendant would be shut out of one of the most crucial stages of the guilt–determining process if he were not present when the jury was chosen. Similarly, since the bar against double jeopardy is meant in part to protect defendants from undergoing the anguish and public humiliation of a second trial, it is eminently sensible to conclude that this emotional and psychological harm materializes at the point when members of the public are selected to sit in judgment on a defendant. In the case of removal, the federal courts have recognized that removal is, in some sense, a "derogation of state sovereignty", as well as a device that might be perverted to gain interruption and delay or to escape an unfavorable state ruling. *See United States ex rel. Walker v. Gunn*, 511 F.2d at 1027. The rule requiring removal before the state judicial system has affirmatively entered into resolution of a case by impanelling a jury minimizes the possibility of undue interference with, or affront to, the state court. *See Removal Cases*, 100 U.S. 457, 25 L.Ed. 593 (1879).

In the context of Rule 68, there is no such compelling policy to mandate the choice of impanelling as the "beginning" of the trial. The purposes of the Rule are to encourage settlements, thereby avoiding the expense to the parties and the court of protracted litigation, and to protect a party who offers a good faith settlement proposal from liability for subsequently accrued costs. *See Scheriff v. Beck*, 452 F.Supp. 1254, 1259 (D.Colo.1978); *Staffend v. Lake Central Airlines, Inc.*, 47 F.R.D. at 219; *Nabors v. Texas Co.*, 32 F.Supp. 91 (W.D.La.1940). The Rule attempts to minimize the economic burden of litigating a case to the bitter end by facilitating an acceptable compromise at some earlier point. Since a late settlement that avoids some of the trial costs would seem to be better than no settlement at all, the policy of the Rule would appear best served by selecting the last possible point in time for cutting off Rule 68 offers. *Cf. Cover v. Chicago Eye Shield Co.*, 136 F.2d 374 (7th Cir.), *cert. denied*, 320 U.S. 749, 64 S.Ct. 53, 88 L.Ed. 445 (1943) (holding that Rule 68 offer could be made after a judgment of copyright infringement had been entered but before a hearing on damage accounting had begun; the wisdom of this interpretation was recognized and, in 1948, the Rule was amended accordingly). Indeed, looking purely to the policies embodied in the Rule, one wonders why there should be *any* restriction on when offers of judgment can be made.

It seems to this Court that it is pragmatic considerations that are most useful in construing the phrase "before the trial begins". As Professors Wright and Miller point out, the ten–day rule dovetails with the provision giving the recipient of an offer ten days in which to respond. Wright & Miller, *Federal Practice and Procedure* § 3003 at 58 (1973). According to one member of the Advisory Committee, the Rule should properly be read as precluding revocation of the offer during that ten day period. *See id.* § 3004 at 60, *quoting* Judge George Donworth. In other words, having made a Rule 68 offer, a defending party is stuck with it for ten days, even though changing circumstances may make a settlement in the proffered amount less advantageous from the offeror's standpoint.

With this in mind, the Court feels that the meaning of "more than ten days before the trial begins" is fairly evident. As one federal trial judge has sagely noted, "The value of any lawsuit for settlement purposes varies from time to time and often from day to day." *Staffend v. Lake Central Airlines, Inc.*, 47 F.R.D. at 220. Certainly the potential for variation is greatest once the trial actually commences. The performance of witnesses and opposing counsel, the reactions of the jury, and the evidentiary rulings of the court can drastically alter a party's prior assessment of its chances for success. To permit a binding offer of judgment to remain open during those critical days of trial would be to give the offeree an overwhelming tactical advantage. If, for example, an offer is made four days before actual trial, the recipient has six days to watch how the case is unfolding and weigh the probabilities. If the

trial is going well, the offer can simply be ignored; if things begin to look grim, the offeree can decide to go with the sure thing, even though the defendant now realizes that he probably would have escaped with a lower liability, or even with none at all. Entering into a settlement at any stage of a case is necessarily a gamble for both sides; locking one side into a settlement offer while the other side assesses the ongoing trial is, purely and simply, stacking the deck.

The Court believes that this practical pitfall is what the ten–day rule is meant to avoid.[2] I therefore conclude that although a trial may formally "begin" with the selection of the jury for some purposes, for the purpose of Rule 68, the trial begins when the trial judge calls the proceedings to order and actually commences to hear the case. Where, as in the case at hand, the impanelling of a jury precedes the presentation of evidence and arguments by several weeks or months, this interpretation furthers the policy of Rule 68 by permitting offers of judgment to be made, and perhaps accepted, in the intervening period. At the same time, this interpretation in no way diminishes the Rule's protection of defendants who might otherwise be locked into a no–win settlement posture.

Since this case has not yet come to trial, the Court finds the defendants' May 21, 1980 Offer of Judgment to be timely under Rule 68. I therefore do not reach plaintiff's contention that defendants are estopped now to deny the validity of their Offer.[3]

*The Inclusion of Attorney's Fees Within the Meaning of "Costs"*

Defendants vigorously maintain that they never intended their offer of $20,001.00 "with costs now accrued" to include attorney's fees. They point out that Rule 68 is, in essence, a framework within which the parties achieve a private contractual agreement. *See, e. g., Mr. Hanger, Inc. v. Cut Rate Plastic Hangers, Inc.,* 63 F.R.D. 607, 610 (E.D.N.Y.1974) (court refers to part of a Rule 68 offer as "valuable consideration"). The parties work out the terms of the judgment without judicial intervention or supervision. The offer is served on the opposing party, rather than filed with the court. *See Tansey v. Transcontinental & Western Airlines,* 97 F.Supp. 458 (D.D.C.1949); *Nabors v. Texas Co.,* 32 F.Supp. at 92. Thus, a court will have no knowledge of the existence or terms of a proposal until it is accepted. Even at that point, the court's involvement is limited to formalizing the agreement hammered out by the parties; the Rule directs that, upon proper filing of the offer and acceptance, the clerk "*shall enter*" the agreed upon judgment. (emphasis added).

In light of the basically contractual nature of the Rule 68 procedure, the

---

2. It might be argued that the Court's perception of the ten–day rule as a defendant–protective device is a misinterpretation. After all, the canny defense counsel would simply avoid trapping his or her client into an unfavorable position by not tendering settlement offers at the eve of trial. The Rule would not be designed simply to protect those without forethought from their own folly.

The Court believes, however, that it is not only the "foolish virgins" who could be caught unawares with their offers of judgment exposed. With the practical difficulty of predicting how long scheduled trials will take, and with the Speedy Trial Act constantly percolating criminal cases to the top of the calendar, it is impossible to precisely fix in advance the starting date for a particular trial. It is this Court's policy to give counsel several weeks warning that their case will probably be called during a certain calendar month. However, we can guarantee only 24 hours notice of the actual trial day. Thus, it is not inconceivable that the most clever of attorneys could make an offer of judgment one day only to be informed by the Court the next day that trial is scheduled to begin two days hence. The Court believes that the ten–day rule is designed to encourage the prudent attorney to continue making settlement offers by shielding him or her from such unforeseeable contingencies. In the hypothetical case, the rule would automatically nullify the offer made four days before trial.

3. Plaintiff states the question thus:

"[W]ill the Federal Court countenance the behavior of a party who intentionally makes an invalid offer in reliance upon the notion that if it is accepted and he finds the consequences distasteful he can point to its invalidity as a defence and thus trick the plaintiff who accepted the offer in good faith."

Court agrees with defendants that there must be a "meeting of the minds" in order to have a binding Rule 68 offer. *See Cruz v. Pacific American Insurance Co.*, 337 F.2d 746, 749 (9th Cir. 1964); *Gamlen Chemical Co. v. Dacar Chemical Products Co.*, 5 F.R.D. 215, 216 (W.D.Pa.1946); *Davis v. Chism*, 513 P.2d 475, 481 (Ala.1973) (construing identical Alaska rule). And the Court is willing to believe that defendants may not have subjectively intended to offer attorney's fees. It is well-settled, however, that when contracting parties use terms of art, they will be deemed to have "intended" the full legal meaning of those words. Here, defendants included "costs now accrued" in their offer.[4] Obviously they would not now be heard to say that they did not *really* mean thereby to assume liability for such items as docket fees or transcript costs. *See* 28 U.S.C. § 1920 (listing items included in "costs"). Thus, the real question before the Court is not whether defendants actually intended to offer attorney's fees, but whether the term "costs" includes such fees as a matter of law. *See Waters v. Heublein, Inc.*, 485 F.Supp. 110, 115 n.3 (N.D.Cal.1979); *Scheriff v. Beck*, 452 F.Supp. at 1260.

Under the American rule, attorney's fees have not traditionally been considered part of costs. *See Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Even where statutory authorization for assessing fees exists, courts have been reluctant to count fees as costs for Rule 68 purposes. *See, e. g., Gamlen Chemical Co. v. Dacar Chemical Products Co.*, 5 F.R.D. at 216 (even though general rule is to allow fees to successful copyright plaintiffs, court refuses to construe

Rule 68 as including fees). *Cf. Cruz v. Pacific American Insurance Co.*, 337 F.2d at 750 (same result in insurance case decided under Guam procedural statute which was similar to Rule 68 but did not expressly require the inclusion of "accrued costs" in offer). However, at least two federal courts have reached the opposite result in civil rights cases. Pointing to statutory language which permits the court in such cases to award a reasonable attorney's fee "as part of the costs", *see* 42 U.S.C. § 1988 (Civil Rights Attorney's Fee Awards Act); 42 U.S.C. § 2000e–5(k) (Title VII), and to Supreme Court admonitions that attorney's fees, like costs, should as a matter of course be awarded to the prevailing party,[5] these courts have held that attorney's fees are included in Rule 68 "costs". *See Waters v. Heublein, Inc.*, 485 F.Supp. at 114 (Title VII); *Scheriff v. Beck*, 452 F.Supp. at 1260 (Civil Rights Attorney's Fee Awards Act).

In *Waters v. Heublein, Inc.* Judge Wollenberg made a thorough and perceptive analysis of the meaning of Rule 68's "accrued costs" provision in light of the availability of attorney's fees in civil rights cases. *Waters* presented the unusual case of a *defendant* arguing that "costs" encompassed attorney's fees. The defendant had made a pre-trial offer which the plaintiff did not accept. Subsequently, the plaintiff recovered a judgment which was less than the rejected offer.[6] Therefore, under Rule 68, she was automatically barred from recovering any costs that had accrued after the offer. Defendant argued that Rule 68 also cut off plaintiff's right to recover subsequently incurred attorney's fees. The Court agreed. Judge Wollenberg pointed out that awarding fees "for time expended

---

4. Indeed, they could not have made a valid Rule 68 offer without this inclusion. Rule 68's only limitation on party autonomy is its requirement that the offer include accrued costs. The cost provision "puts teeth in the rule and makes it effective by encouraging acceptance." *Staffend v. Lake Central Airline, Inc.*, 47 F.R.D. at 220. *See Waters v. Heublein, Inc.*, 485 F.Supp. 110 (N.D.Cal.1979); *Mr. Hanger, Inc. v. Cut Rate Plastic Hangers, Inc.*, 63 F.R.D. 607 (E.D.N.Y.1974).

5. *See, e. g., Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416, 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975).

6. Actually, the case was somewhat more complex in that the issue of fees was also relevant to determining whether the rejected offer in fact exceeded the judgment in amount. However, the simplified account given here adequately makes Judge Wollenberg's point.

during a part of the case for which the Rule absolutely precludes the award of costs . . . would stand the Rule on its head." 485 F.Supp. at 115. He concluded that considering fees as part of Rule 68 costs furthered the policies of both the Rule and civil rights attorney's fees statutes:

> Awarding fees covering their pre–offer work to attorneys who settle cases through acceptance of an offer of judgment advances the purposes underlying the fees provision. On the other hand, applying Rule 68 to bar recovery of post–offer fees in a case in which a party has rejected a reasonable offer that ultimately exceeds the judgment does not unduly interfere with the operation of this provision. Since the pre–offer efforts of the attorney reached a result more favorable to the client than the verdict, there seems little reason to reward that attorney for the post–offer work necessitated by a mistaken judgment that failed to obtain any additional benefits. Thus, this application of the Rule should work to further the legitimate concerns of judicial economy and efficiency without discouraging attorneys from pursuing civil rights litigation. *Id.* at 114–15.[7]

This Court finds the analysis in *Waters* well–reasoned and persuasive. Were it writing on a clean slate, the Court would concur in the conclusion that attorney's fees are part of Rule 68 costs in civil rights cases. The Court believes, however, that such a holding is foreclosed by the First Circuit's recent decision in *White v. New Hampshire Department of Employment Security*, 629 F.2d 697 (1980).

*White* involved the timeliness of a request for attorney's fees by a § 1983 plaintiff. Richard White had brought a class action claiming that the operation of New Hampshire's unemployment compensation program violated both due process and certain provisions of the Social Security Act, 42 U.S.C. § 503(a)(1). The District Court

agreed that there was a statutory violation and entered judgment for the plaintiff class. Defendants appealed. Before the appeal was considered, the parties negotiated a settlement and, with leave of the First Circuit, a consent decree was entered by the District Court. Four and a half months later, plaintiff moved for an award of attorney's fees under 42 U.S.C. § 1988. In ruling on the timeliness of this motion, the First Circuit had to determine whether fees in these circumstances could be considered "costs". If so, plaintiff's request would come under Rules 54 and 58, and there would be no time restriction on his request for a fee award. If fees are not costs, however, plaintiff's request would have had to have been incorporated within the final judgment, or made within ten days of the entry of judgment pursuant to Rule 59.

Although conceding that 42 U.S.C. § 1988 did refer to attorney's fees "as part of the costs", the First Circuit rejected the view that Congress "meant thereby to include those fees within the specific type of costs recoverable after judgment under Fed.R. Civ.P. 54." At 702. In reaching this conclusion, the Court pointed out that Rule 54(d) is given meaning by 28 U.S.C. § 1920 which lists assessable costs that are fundamentally different from attorney's fees. Expenses such as marshall's and docketing fees, witness fees, and transcript and copying costs can be readily calculated by the clerk "on one day's notice". *See* Rule 54(d). By contrast, an attorney's fee award requires the trial court to engage in a complex factual determination encompassing as many as a dozen different factors. The Court concluded:

> The potential amount of the fees award, the varied factors which must be considered by the court in reaching the fees decision, and the crucial role of the judge and parties in reaching that final determination render the fees/costs comparison strained at best. At 703.

---

7. Judge Wollenberg carefully qualified the concept of "additional benefits" gained by pursuing a case to trial by noting, "Perhaps a different result would be mandated in a case raising a significant novel question. Litigating such a case through judgment could yield benefits to the state of the law that might justify the award of fees to counsel even after the rejection of a reasonable offer." 485 F.Supp. at 115 n.2.

Certainly, *White* does not purport to determine the meaning of "costs" in Rule 68. However, this Court does not see how it can seriously be contended that the term "costs" in that rule means something radically different from the word "costs" in Rule 54. Moreover, in considering the question in the context of a consent decree, the Court in *White* expressed concern that a subsequent request for attorney's fees "may lead to a sizeable and unpredictable addition to the burdens shouldered by the losing party." At 704. Of course, if the law were established that attorney's fees in civil rights cases are considered part of costs, defendants' counsel would plan their settlement strategy with that in mind. Nevertheless, the inclusion of fees as "costs" would inject the same element of uncertainty into the Rule 68 area as the First Circuit feared it would inject into the area of consent decrees.

■ For these reasons, this Court concludes that the inclusion of "accrued costs" in a Rule 68 Offer of Judgment does not, as a matter of law, encompass attorney's fees.[8] Since there is no evidence that defendants in this case intended to go beyond the legal meaning of "costs" and voluntarily cover fees, this Court holds that defendants' May 31 offer does not include attorney's fees.[9]

*Disposition of the Case*

Defendants suggest that, if the Court find in their favor, two dispositions are possible. First, the Court could conclude that the plaintiff has manifested a valid and binding acceptance of their offer of $20,001 plus accrued costs (not including attorney's fees, of course). Judgment would then be entered accordingly.[10] Alternatively, the Court could construe the plaintiff's "acceptance" of the $20,001 "plus costs including attorney's fees" as a counteroffer. In that event, no effective acceptance would have been communicated and the defendants' offer would have lapsed on June 1, 1980.

In *Gamlen Chemical Co. v. Dacar Chemical Products Co.*, 5 F.R.D. at 216, the federal court for the Western District of Pennsylvania chose the first method of disposition. *Gamlen* is distinguishable, however, for the plaintiff there said nothing about expecting attorney's fees when it gave its acceptance. Here, of course, the plaintiff insisted on the inclusion of fees in his original May 30 response. This is sufficient reason for concluding that there was never a "meeting of the minds" on the terms of the offer, and therefore no true acceptance. Moreover, the Court feels that it would be inequitable under the circumstances to hold plaintiff to the agreement. The decisions of both federal courts that had previously considered the precise question supported plaintiff's belief that "accrued costs" would include attorney's fees in a civil rights case. Plaintiff might well have considered $20,001 an unreasonably low settlement in the absence of fees.

The Court thinks it better that both sides, now that they are fully aware of their legal positions, approach the settlement question afresh. Therefore, the case will be scheduled for trial in due course as it comes up on the calendar, subject to the parties' abili-

---

8. This holding does not necessarily leave the defending party in a civil rights case without protection from the burden of liability for the plaintiff's entire attorney's bill. The defendant could expressly include fees in his offer of judgment. If the plaintiff rejects the offer and ultimately recovers a lesser judgment, the defendant has laid a foundation for arguing that he should not be liable for plaintiff's subsequently incurred fees. Of course, without the mandate of the Rule to back him up, the defendant must take his chances that a court will accept his argument on the fees point.

9. Because the Court finds for defendants on the grounds that fees are not "costs", it need not address their additional argument that the fees involved here have not yet "accrued". The Court notes, however, that it finds Judge Wollenberg's treatment of this point well–reasoned and convincing. *See Waters v. Heublein, Inc.*, 485 F.2d at 114.

10. The parties' briefs make no mention of the $5,000 contingent offer from the City of Providence. Consequently, the Court has no idea whether the Committee on Claims has acted on the proposal, and therefore does not address it in today's decision.

ty to reach a mutually–acceptable offer of judgment in the interim.