**Alfred W. CHESNY, etc., Plaintiff,**

**v.**

**J. MAREK, et al., Defendants.**

**No. 79 C 4186.**

United States District Court,
N. D. Illinois, E. D.

Sept. 3, 1982.

James D. Montgomery, James D. Montgomery & Associates, Chicago, Ill., for plaintiff.

Donald G. Peterson, Schaffenegger, Watson & Peterson, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Alfred W. Chesny ("Chesny"), individually and as administrator of the estate of his deceased son Steven, sued defendants under 42 U.S.C. § 1983 ("Section 1983") and a number of state tort laws based on the allegedly unlawful fatal shooting of Steven. After trial on the merits a jury found in part for Chesny and awarded a total of $60,000 against defendants Marek, Wadycki and Rhode. Chesny now moves for an additur to the judgment as well as an award of attorneys' fees. Defendants move for judgment n. o. v. as well as an award of attorneys' fees. For the reasons stated in this memorandum opinion and order Chesny's motions are granted in part and denied in part and defendants' motions are denied.

### Additur
#### *Loss of Future Earnings*

Though the jury failed to award Chesny any amount as compensation for the loss of Steven's future earnings, Chesny claims he is entitled to such recovery as a matter of

law.[1] Chesny's expert economist testified that based on Steven's wage rate at the time of his death ($5.50 an hour), less a 30% deduction for personal consumption, the present value of his future lost earnings amounted to $504,859.

■ But a plaintiff is not absolutely entitled to recover such future earnings in a death action. Recovery is limited to the damage suffered by the next of kin. That damage can take two forms:

1. what amount decedent would have spent on next of kin during his lifetime, and

2. what amount would have accumulated in decedent's estate by the time of his death.

*Keel v. Compton,* 120 Ill.App.2d 248, 256 N.E.2d 848 (3d Dist. 1970); *Denton v. Midwest Dairy Products Corp.,* 284 Ill.App. 279, 1 N.E.2d 807 (4th Dist. 1936).

■ As to the first of those elements, there was ample evidence from which a jury could conclude Steven was not supporting anyone and his entire future earnings would have gone either into savings or personal consumption. Thus a jury could reasonably have limited its award to the amount (if any) Steven would have left in an estate at the time of his death (assuming a normal life expectancy).

As for the second factor, this Court also finds the jury could reasonably conclude Steven would not have left any money in his estate. It is true the testimony of Chesny's expert was that Steven would personally consume only 30% of his total future earnings and the remaining 70% would be left as an estate. Defendants offered no expert testimony on that score. But a plaintiff carries the burden of proof as to all damages, and the jury was entitled to reject the expert's testimony and draw its own conclusions.[2] This Court cannot overturn the jury's implicit determination that Steven would have left no estate at his death.

*Funeral Expenses*

■ Chesny also claims the uncontradicted testimony demonstrated he was entitled to recover $3,000 in funeral expenses. Defendants correctly contend that the verdict

---

1. In part Chesny seeks to fault this Court for claimed error in the jury instructions on damages. That represents impermissible second guessing or sour grapes or both. Chesny's Instruction 46 was given as tendered. It directed the jury to "consider" three elements of damages (one of which was loss of future earnings) and said:

> Whether each of these elements of damages has been proven by the preponderance of the evidence is for you to determine.

Chesny cannot complain if the jury took that instruction at face value and decided loss of future earnings had *not* been proved. Moreover, it was actually during the course of trial that our Court of Appeals decided *O'Shea v. Riverway Towing Co.,* 677 F.2d 1194 (7th Cir. 1982). Cross-examination of Chesny's expert economist by defense counsel, just a few days before this Court received the slip sheet opinion in *O'Shea,* had created the potential risk of an improperly high discounting of future earnings if the jury decided to award them. This Court therefore drew counsel's attention to the newly-decided case and drafted Court's Instruction 1 to deal with the proper calculation of such damages. Chesny's counsel specifically approved that instruction (drawn to avoid potential prejudice to his client) during the jury instruction conference (Tr. 155, May 10, 1982). It ill becomes counsel to assert error on that score. In legal terms, doctrines of either waiver or induced error (if it were error) dispose of that untenable argument.

2. Certainly a jury could rationally reject the 30% personal consumption figure as improbably low for a single man earning at an $11,000 annual rate, living in his own apartment (of substantial size in an attractive building in a suburban residential neighborhood, all as viewed by the jury) and buying and owning an automobile. Indeed the evidence of Steven's having a savings account was coupled with testimony as to his having used his savings for the automobile and other personal acquisitions. In addition the jury could have considered Steven's spotty employment record since high school graduation, involving sporadic work as a service station attendant and only a few months' work as a surveyor (at the $5.50 hourly rate) before his untimely death. And of course an expectation of increased earnings in future years can rationally be matched by a jury with an expectation of correspondingly increased consumption. This is not of course to indicate what this Court's resolution of the evidence would have been had it, not the jury, been the trier of fact—but such substitution of judgment is not the Court's role on the current motion.

forms approved by Chesny's counsel, providing separate lines for separate categories of damages, asked only for the jury's listing of (1) compensatory damages for the constitutional injury and (2) lost earnings. They say Chesny failed to ask for pecuniary damages and therefore lost his chance to get recovery for funeral expenses.

Under the circumstances Chesny cannot prevail:

1. If funeral expenses *could not* be within the "compensatory damages" awarded by the jury, Chesny effectively waived his right to their recovery by failing to provide a separate instruction for such an award.

2. If funeral expenses *could* be part of the "compensatory damages" award, the jury must be viewed as having included it within the damage award.

Once again (as with the issue described at n.1) Chesny wrongly seeks to exercise hindsight.

### Defendants' Motion for Judgment N.O.V.

██ Defendants' motion for judgment n. o. v. is based on this Court's failure to instruct the jury on the requirements of the Illinois Criminal Code for police conduct. That failure does not constitute error because (1) federal law not state law establishes the proper standard of conduct and (2) in any case defendants have failed to point to *any* substantive difference between the standard of conduct outlined in the Illinois Criminal Code and the actual instruction given by this Court. Again the jury's resolution of the factual issues was rational. Accordingly defendants' motion for judgment n. o. v. and their related motion for fees and costs must be denied.

### Fed.R.Civ.P. ("Rule") 68

Rule 68 provides:

At any time more than ten days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued .... An offer not accepted shall be deemed withdrawn and the evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Defendants made a proper Rule 68 offer of judgment to Chesny for $100,000 plus costs and attorneys' fees then accrued. Because the eventual jury award was only $60,000, Rule 68 comes into play. It poses several problems in the context of this case.

If Rule 68 is applicable, there is no doubt Chesny cannot collect from defendants any "costs" incurred after the date of the offer of judgment. That in turn poses the question whether "costs" as used in Rule 68 include attorneys' fees, preventing Chesny from recovering fees incurred after the date of the offer.

Chesny first contends Rule 68 should not apply because the $100,000 offer was not reasonable in light of the nature of this action. Rule 68 does not literally require a "reasonable" offer, but Chesny cites *August v. Delta Air Lines, Inc.,* 600 F.2d 699 (7th Cir. 1979) to support a reasonableness requirement.

In *August* the plaintiff eventually lost at trial after a nominal Rule 68 offer of judgment. Our Court of Appeals held Rule 68 would not apply because the offer was not a good faith attempt to settle the action. But the Supreme Court affirmed on entirely different grounds, *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981). It held Rule 68 did not apply at all to a situation where a plaintiff lost a trial after a valid Rule 68 offer of judgment. Instead Rule 68 operates only where a plaintiff eventually prevails at trial but for an amount less than the offer of judgment. Chesny in essence argues the Seventh Circuit *August* rule should still apply in that event.

That reading is dubious at best in light of the Supreme Court's treatment of the issue. If a plaintiff wins at trial, but is awarded a

judgment for less than the earlier Rule 68 offer, it is really a contradiction in terms to label that offer a sham. As the Supreme Court said, 450 U.S. at 355, 101 S.Ct. at 1151–1152:

> But the plain language of the Rule makes it unnecessary to read a reasonableness requirement into the Rule. A literal interpretation totally avoids the problem of sham offers, because such an offer will serve no purpose, and a defendant will be encouraged to make only realistic settlement offers.

■ Moreover, even if a reasonableness requirement were incorporated into Rule 68 this Court would find defendants' offer of $100,000 met that test. In *August* the sham or unreasonable offer with which our Court of Appeals was concerned was a truly nominal offer whose only purpose was to put the plaintiff at peril under Rule 68. While Chesny might have been of the opinion the $100,000 offer was low, and while defendants may well have been prepared to go higher in negotiations, the offer was certainly a good faith attempt to settle the action and not simply a sham designed to invoke Rule 68. That Rule must be held to apply here.

■ As already indicated, the real question then becomes whether attorneys' fees are part of the post-offer "costs" Chesny cannot recover. Authority on that question is sparse. Two early cases may arguably be said to support the proposition that costs under Rule 68 should not include attorneys' fees. *Gamlen Chemical Co. v. Dacar Chemical Products Co.,* 5 F.R.D. 215, 216 (W.D. Pa.1946); *Cruz v. Pacific American Insurance Corp.,* 337 F.2d 746 (9th Cir. 1964).[3] But more recent cases stand for a different result when an underlying statute specifically provides for an award of fees as part of costs to a prevailing plaintiff.

In *Waters v. Heublein, Inc.,* 485 F.Supp. 110 (N.D.Cal.1979) a plaintiff prevailed at trial after a Rule 68 offer of judgment, but like Chesny obtained a judgment for less than the offer. *Waters* involved the Equal Pay Act, which like Section 1983 permits an award of attorneys' fees to prevailing plaintiffs. "Costs" in Rule 68 were held to include fees for several reasons:

1. Under the statutory scheme the award of fees was treated as a component of plaintiff's entitlement to costs.

2. Case law under Title VII required an award of fees to prevailing plaintiffs unless there was a showing of special circumstances.

3. Defendant's offer of judgment had included an offer of costs and attorneys' fees then accrued.

4. Including fees within Rule 68's definition of "costs" would promote the policy of encouraging settlements.

*See also Scheriff v. Beck,* 452 F.Supp. 1254, 1260 (D.Colo.1978).

Two other cases lend support to the *Waters* position. In *Greenwood v. Stevenson,* 88 F.R.D. 225 (D.R.I.1980) a Section 1983 plaintiff accepted a Rule 68 settlement offer, which defendants then contended did not include attorneys' fees. Prevailing Section 1983 plaintiffs are entitled to fees as part of costs under 42 U.S.C. § 1988. After analysis the *Greenwood* court said that were the matter a question of first impression the court would agree with *Waters* and include fees as part of costs in Rule 68. However the court felt bound to rule otherwise because of a First Circuit opinion (the district court sat in that Circuit) that held a motion for allowance of fees came under Rule 59(e) and was not part of a motion for costs under Rule 54. That underpinning for the anti-*Waters* conclusion has since collapsed, for the First Circuit opinion was reversed by the Supreme Court in *White v. New Hampshire Department of Employment Security,* —— U.S. ——, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). There the Supreme Court held a motion for fees was *not* properly made under Rule 59(e).

---

**3.** *Cruz* however is doubtful authority at best. Indeed a California district court (bound by Ninth Circuit authority, as this Court is not) found *Cruz* not controlling and included attorneys' fees within Rule 68 costs. *Waters v. Heublein, Inc.,* 485 F.Supp. 110, 115 n.3 (N.D. Cal.1979).

Finally this Court's own opinion in *Coleman v. McLaren*, 92 F.R.D. 754 (N.D.Ill. 1981) considered whether an accepted Rule 68 settlement had included fees as part of the costs offer. Although this Court held it had not, the opinion specifically pointed out the underlying statute in that case did not provide for an award of fees to a prevailing plaintiff.

There is much force in the *Waters* approach. Shortly after the Supreme Court decision in *White* our own Court of Appeals held attorneys' fees should be sought along with costs under Rule 54(d). *Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226 at 1248–1249 (7th Cir. 1982). Because Section 1988 specifies attorneys' fees are awarded as part of "costs," it makes eminently good sense to give the same word the same content for Rule 68 purposes in a Section 1983 case.

It is true that one important policy consideration was not addressed by the *Waters* court. Section 1983 suits are civil rights actions, which carry with them a strong policy of encouraging vigorous enforcement. Most Section 1983 plaintiffs cannot independently afford to pay counsel, who thus receive compensation—only if they prevail—under Section 1988. That creates a potential conflict of interest for a plaintiff's counsel faced with a Rule 68 offer of judgment. Already undertaking a risk of handling a case without compensation should he or she lose, counsel would now confront the added risk of conducting a trial without compensation should the eventual verdict be less than the offer of judgment. Because the offer of judgment must include fees accrued to that time, trying the case may present greater peril than potential benefit for the lawyer (as contrasted with the client). That creates a real possibility that a lawyer who genuinely believes (but is unsure) his or her client will receive more from a jury than from the Rule 68 offer of judgment might "sell out" the client to insure the lawyer's receipt of fees. Any such danger, always distressing, is doubly so in the context of enforcement of civil rights laws.

Despite that factor, after careful consideration this Court is persuaded to the *Waters* result. First, the *Waters* point of view is consistent with the literal language of Rule 68 and Section 1988 (as well as our Court of Appeals' ruling that fees should be sought under Rule 54 as part of "costs"). Second, such an interpretation will stimulate realistic settlement efforts before trials. Finally, the problem Chesny claims is presented by this case—and any consequent deterrence of civil rights actions—will rarely arise. It requires a combination of (1) a plaintiff's lawyer's reasonable assessment of the case as worth considerably more than defendant's offer and (2) an actual result less than that offer. This Court cannot be persuaded to adopt a wrong rule because the right one may have a harsh application in a few cases. Accordingly it holds that under Rule 68 Chesny cannot recover costs, including attorneys' fees, incurred after the offer of judgment.

Rule 68 poses one last problem suggested by the language (emphasis added):

> the offeree must pay *the costs* incurred after the making of the offer.

To this point this opinion has dealt with the offeree's (plaintiff's) payment of his *own* costs. But the rule also raises the question whether the *defendants'* "costs" are also payable by the plaintiff—and if so, whether such "costs" include defendants' attorneys' fees.

As for the latter question, a "no" answer is readily reached. Defendants, having lost the case (albeit by less than they originally offered in settlement) are not thereby rendered "prevailing parties" under Section 1988. Their "costs" therefore do not include attorneys' fees. *Waters*, 485 F.Supp. at 117.

In fact the same conclusion reasonably follows as to defendants' "costs" in the conventional sense. As the Supreme Court said in *August*, 450 U.S. at 359 n.24, 101 S.Ct. at 1153 n.24:

> Some commentators assume that the Rule, even when applicable, operates to deny costs to a prevailing plaintiff and not to impose liability for defendants' costs on that plaintiff.

It then quoted extensively from Wright & Miller, *Federal Practice and Procedure,* Moore's *Federal Practice* and a Virginia Law Review article. This Court agrees with the position taken by the cited authorities.[4] It will not award defendants any costs against Chesny.

### Fee Request

Chesny will obviously have to submit a revised fee request limited to fees incurred up to the time of the judgment offer. However this Court can make the following comments at this time:

1. It will not permit an award for costs incurred for clerical and secretarial services. Those costs are part of an attorney's overhead and are included in the attorney's hourly fee. Awards for paralegal time are not analogous, for those expenses are customarily separately billed to a client.

2. It finds, based on the professional experience of Chesny's attorneys, that the hourly rates sought are reasonable.[5]

3. It rejects defendants' arguments that a reasonable amount of fees should be determined by looking either to defendants' fees or to an amount equal to one-third of the eventual award. Reasonableness of the time spent, in light of the factors identified in the case law, is the issue.

4. Defendants are of course entitled to an evidentiary hearing if they so desire. But fees generated by such a hearing are also compensable (and would be charged to defendants notwithstanding Rule 68). *Spray-Rite,* 684 F.2d at 1250. Under the circumstances it appears to be in the parties' mutual self-interest to resolve accounting and verification matters without requiring a formal hearing.

This Court will not make any determination at this time as to the reasonableness of the hours spent by Chesny's counsel or as to the possible use of a multiplier.

### Conclusion

Defendants' motion for judgment n. o. v. and attorneys' fees is denied. Chesny's motion for an additur is denied. Chesny's motion for fees as a prevailing party under Section 1988 is granted except that Chesny shall be entitled to fees and costs incurred only until the time of the offer of judgment. Chesny's counsel shall submit a revised fee request on or before September 13, 1982. On or before September 20, 1982 defendants' counsel shall notify the Court and opposing counsel whether an evidentiary hearing will be required.

---

4. *Waters,* 485 F.Supp. at 117, did come to a different conclusion.

5. Defendants unfairly denigrate (although they disclaim that intention) the experience of Chesny's lead counsel as derived in "all criminal or quasi-criminal cases" (July 29, 1982 Mem. 13). In fact 1½ years of counsel's 25 years at the

bar were spent in the massive *Hampton v. Hanrahan* litigation. In any case, this Court is well satisfied as to the quality of the representation afforded by lead counsel as well as his experience, and it finds the requested $150 hourly rate for his time is very reasonable indeed.