M. Cecil **LYONS** and Tenner Lyons, Plaintiffs,

v.

John J. **CUNNINGHAM,** Wm. Ciuros, Jr., Fritz Fawcett, Cleveland Bryce, Anthony Larkin, Michael Pastena, Franklin D. Wood, Joseph Judge, and The City of New York, Defendants.

No. 79 Civ. 3953 (JMC).

United States District Court, S.D. New York.

Oct. 19, 1983.

---

Clark, Wulf & Levine, New York City (Alan H. Levine and Melvin L. Wulf, New York City, of counsel), for plaintiffs.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of N.Y., New York City (John P. Woods, New York City, and Evelyn Jonas, of counsel), for defendants.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Plaintiffs' motion for costs and attorneys' fees is granted in part and denied in part. 42 U.S.C. § 1988.

Defendants' cross–motion for costs and attorneys' fees is granted in part and denied in part. Fed.R.Civ.P. 68.

## FACTS

After an eight-day trial, the jury found that defendants John J. Cunningham and Franklin D. Wood violated the constitutional rights of Larry Lyons and awarded his parents, plaintiffs Tenner and M. Cecil Lyons, $12,000 each for their mental anguish and sorrow. In addition, the jury also determined that defendant Fritz Fawcett violated Larry Lyons' constitutional rights but that he established a good faith defense. The jury further found that plaintiffs failed to establish their claims against the remaining individual defendants and the City of New York. Finally, the jury decided neither the Estate of Larry Lyons nor Lyons' brother Ronald were entitled to an award of damages.

On April 7, 1983, the Court denied plaintiffs' motions to amend the judgment and for a new trial and defendants' cross-motion for judgment notwithstanding the verdict and directed plaintiff, as prevailing party, to file appropriate memoranda and affidavits on the question of attorneys' fees. Thereafter, plaintiffs submitted an application for costs and attorneys' fees in the amount of $98,172.90. Plaintiffs' lead counsel, Alan H. Levine seeks $72,625 for 415 hours of work; Levine's former partner, Melvin L. Wulf, seeks $11,988 for 66.-60 hours of work; and Robert E. Wilson, a law school graduate but not an admitted attorney, seeks $3,780 for 63 hours of work. In addition, plaintiffs seek the following costs: (1) $1,701.90 for deposition

transcripts; (2) $5,250.00 for expert witness fees; and (3) $2,828.00 for daily trial transcripts. To support this request, plaintiffs' attorneys have submitted affidavits generally outlining the hours they spent on this case. Contemporaneous time records, however, were not submitted, although Levine and Wulf stand ready to produce these records if so ordered by the Court.[1] Plaintiffs also did not submit documentation to substantiate their other claims for costs. Levine and Wulf are experienced attorneys with extensive backgrounds in civil rights litigation.[2]

Defendants raise several objections to plaintiffs' application and have cross-moved for a limited award of attorneys' fees and costs. Defendants assert that plaintiffs' application should be substantially reduced because: *one*, plaintiffs achieved limited success in this action; *two*, plaintiffs' attorneys have not properly documented their requests for compensation; *three*, plaintiffs' attorneys' hourly rates are exorbitant; *four*, plaintiffs cannot recover expert witnesses' fees; *five*, plaintiffs failed to document their claim for deposition and trial transcript costs and show the necessity of these expenses to their case; and *six*, pursuant to Rule 68, plaintiffs cannot recover any costs, including attorneys' fees, incurred after defendants' offer of judgment in October 1980. Defendants also seek an award of attorneys' fees because they assert the claims against defendants Michael Pastena, Anthony Larkin and Cleveland Bryce were frivolous and vexatious. Similarly, defendants seek an award of attorneys' fees for the time expended defending the claims brought on behalf of Ronald Lyons because allegedly they also were frivolous. Defendants further seek an award of costs for the depositions of plaintiffs' Ronald and Tenner Lyons and costs of the daily trial transcript. Taking all these factors into account, defendants suggest that the Court reduce plaintiffs' request by two-thirds.

After this action was commenced, the parties earnestly discussed settlement. To this end, the Court was informed by defendants' counsel on January 3, 1980 that the parties had reached a tentative settlement. Apparently, defendants offered to pay plaintiffs $90,000 plus $7,000 in attorneys' fees.[3] While plaintiffs and their attorney found this offer to be satisfactory, the Comptroller of the City of New York did not and would only approve a settlement of $50,000, which included an award of attorneys' fees.[4] Plaintiffs rejected this offer and defendants' formal offer of judgment for "$50,000 inclusive of attorneys' fees and all costs accrued"[5] made on October 20, 1980. The parties then engaged in extensive discovery and motion practice.

At the time defendants made their offer of judgment, the complaint, commenced by M. Cecil Lyons in his capacity as administrator of the Estate of Larry Lyons, alleged claims of deliberate indifference and negligence against only Cunningham, Fawcett, Larkin, Bryce, William Ciuros, Jr. and the City of New York. In December 1980, defendants amended their answer to assert a good faith defense.[6] On July 30, 1981, M. Cecil Lyons was permitted to amend his complaint to allege a cause of action for deprivation of his parental right to raise and enjoy his son.[7] The complaint was

---

1. *See* Reply Affidavit of Alan H. Levine, ¶ 2 (filed June 28, 1983); Reply Affidavit of Melvin L. Wulf, ¶ 1 (filed June 28, 1983).

2. For 15 years Wulf was legal director for the American Civil Liberties Union and practiced extensively at the trial and appellate levels in the civil rights area. Similarly, Levine was a staff attorney for the New York Civil Liberties Union for 15 years and has lectured on constitutional rights.

3. *See* Affidavit of Alan H. Levine, ¶ 3 (filed May 10, 1983) [hereinafter "Levine Affidavit"].

4. *Id.*, ¶¶ 4–5.

5. Offer of Judgment, 79 Civ. 3953 (JMC) (filed Nov. 30, 1982).

6. Amended Answer, 79 Civ. 3953 (JMC) (filed Dec. 24, 1980).

7. Order, 79 Civ. 3953 (JMC) at 1 (S.D.N.Y. July 30, 1981).

further amended on November 2, 1981 to assert a claim that the City's budgetary constraints and its failure to provide Larry Lyons with adequate medical attention contributed to his death.[8] On November 24, 1981, Larry Lyons' mother, Tenner Lyons, was added as a plaintiff and Pastena, Franklin D. Wood and Joseph Judge were added as defendants. Prior to trial, the Court allowed Ronald Lyons to be joined as a plaintiff.

## DISCUSSION

The instant motions present significant and complex issues. To simplify the presentation of its rulings, the Court will focus on three questions: First, the extent to which either plaintiffs or defendants are prevailing parties; second, the adequacy and propriety of the parties' respective applications; and third, the effect, if any, defendants' offer of judgment has on plaintiffs' claim for costs and attorneys' fees.

*Prevailing Party*

The Court previously determined that plaintiffs were the prevailing parties. *See* Memorandum and Order, 79 Civ. 3953 (JMC) at 9 (S.D.N.Y. Apr. 7, 1983). Defendants do not seriously dispute this finding but rather argue that plaintiffs' requested fee must be reduced to reflect the limited success plaintiffs allegedly obtained at trial. Defendants assert that such a reduction is mandated by *Hensley v. Eckhart,* — U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) [*"Hensley"*], and *McCann v. Coughlin,* 698 F.2d 112 (2d Cir.1983). Plaintiffs, also relying on *Hensley, supra,* 103 S.Ct. at 1940, argue that a reduction is not warranted because they presented essentially one claim based on a common set of facts—the events which led to Larry Lyons' death.

■ The jury's verdict clearly establishes that plaintiffs succeeded on significant issues in this litigation. Moreover, plaintiffs not only were able to convince the jury that they were entitled to an award of money damages for their emotional suffering, but also were able to convince the Court that their claims were not barred by N.Y.Est.Powers & Trusts Law § 5–4.3 (McKinney 1981). *See generally McFadden v. Sanchez,* 710 F.2d 907 at 910–11 (2d Cir.1983). Therefore, the Court rejects defendants' argument that plaintiffs' fee request must be reduced because the jury found seven of nine defendants not liable. Five of the seven defendants—Fawcett, Pastena, Larkin, Bryce and Judge—all came into contact with Larry Lyons on the day he died. Thus, the Court finds that there was a good faith basis for plaintiffs' claims against these defendants and that the jury's decision concerning them "is not a sufficient reason for reducing [plaintiffs'] fee." *Hensley, supra,* 103 S.Ct. at 1940. The fact that plaintiffs deposed Pastena before joining him as a defendant does not alter the Court's conclusion. Furthermore, merely because plaintiffs received less than anticipated does not, in and of itself, require a reduction. *See McCann v. Coughlin, supra,* 698 F.2d at 128. Had plaintiffs asserted unsuccessful claims against Mid-Hudson Psychiatric Center, the Court would agree that a fee reduction was required. Plaintiffs, however, limited their claims to those who came in contact or were responsible for Larry Lyons when he returned to Riker's Island in December 1978. Accordingly, the Court concludes that plaintiffs' allegations with respect to each defendant were based on the same or similar facts.

Similarly, the legal theories underlying plaintiffs' claims must be considered related rather than distinct. While the quantum of proof is different, the assertions that defendants violated plaintiffs' civil rights and acted negligently are alternative means of presenting the same claim. That plaintiffs' counsel withdrew the negligence cause of action is not important. For whatever their reasons, plaintiffs' decision materially advances the presentation of this case to the jury. It made it easier for the litigants and the Court to present and explain the relevant issues to the jury. Thus,

---

**8.** Order, 79 Civ. 3953 (JMC) (S.D.N.Y. Nov. 2, 1981).

the Court finds it inequitable to penalize plaintiffs' attorney for exercising his judgment in a manner which furthered the interests of all parties. Indeed, were the Court to accept defendants' contentions in this area, a party would be forced to litigate all nonfrivolous claims to a verdict, a result inconsistent with *Hensley, supra,* and the Court's interest in the prompt and efficient disposition of its cases.

Plaintiffs' claims for damages also were related. Although there are differences between plaintiffs' individual requests and M. Cecil Lyons' claim as administrator of Larry Lyons' estate, they are not so distinct as to require the Court to reduce plaintiffs' attorneys' fees because Larry Lyons' estate was not awarded damages. As stated previously, both claims are based on the same set of facts. Moreover, both involve similar legal questions, that is, the application of New York survival statute. Therefore, it would be difficult for the Court to divide or reduce the time Levine spent researching this question to reflect the jury's decision not to award any money to the Estate. Finally, in light of its rulings, *infra,* the Court need not address defendants' claim that the fee application must be reduced because Ronald Lyons failed to win a recovery.

■ In short, the results obtained by plaintiffs comport with the amount of time their attorneys put into the case, although the Court recognizes that the requested fee far exceeds the jury's verdict. In addition, the legal issues involved were unsettled at the time this action was initiated, a fact this Court can take into account in deciding the extent to which plaintiffs prevailed. *See McCann v. Coughlin, supra,* 698 F.2d at 130. Analyzing the fee application as of October 20, 1980, the Court is further convinced that the amount requested is closely related to the success plaintiffs would have achieved had they accepted the offer of judgment.

■ Defendants' claim for costs and attorneys' fees must be reviewed separately and in conjunction with Rule 68. Although several defendants prevailed at trial, an award of attorneys' fees is appropriate only if the Court determines that plaintiffs' claims were "'unreasonable, frivolous, meritless or vexatious.'" *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (quoting *Carrion v. Yeshiva University,* 535 F.2d 722, 727 (2d Cir.1976)). In addition, while not dispositive, a finding that plaintiffs pursued their claims in bad faith, provides a strong basis for making an award to defendants. *See Faraci v. Hickey-Freeman Co.,* 607 F.2d 1025, 1029 (2d Cir.1979). The Court finds, however, that plaintiffs did not pursue their claims on behalf of Ronald Lyons and against Pastena, Larkin and Bryce in an unreasonable or vexatious manner.

■ While it must be recognized that the claims against these defendants were not strong, the Court cannot say that plaintiffs' allegations were meritless. Pastena, Larkin and Bryce all came into contact with Larry Lyons before he killed himself. Moreover, given the theory of plaintiffs' case, that Larry Lyons' death was the result of either improper procedures and supervision or individual malfeasance, a finding that these claims were pursued in bad faith is not warranted. *See* generally *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Similarly, the Court concludes that defendants are not entitled to attorneys' fees for defending the claims of Ronald Lyons. The evidence indicates that Ronald Lyons may have suffered financially and emotionally as a result of his brother's death. Thus, there was a good faith basis for adding Ronald Lyons as a party-plaintiff. Mindful of its obligation to avoid "engaging in post hoc reasoning," *Christiansburg Garment Co. v. EEOC, supra,* 434 U.S. at 422, 98 S.Ct. at 700, the Court will not find Ronald Lyons' claims vexatious or frivolous because the jury chose to discount his testimony. *See Hughes v. Rowe,* 449 U.S. 5, 15–16, 101 S.Ct. 173, 178–179, 66 L.Ed.2d 163 (1980) (per curiam).

While defendants' request for attorneys' fees is without merit, their application for deposition and transcript costs stands on a different footing. Rule 68 plainly requires that if the final judgment obtained is less favorable than defendants' offer of judgment, plaintiffs "must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68. In the instant action, plaintiffs' $24,000 verdict was less than defendants' October 1980 offer of judgment. Accordingly, plaintiffs are responsible for defendants' costs as set forth *infra*.

*Adequacy of Fee Applications*

Defendants raise numerous objections to plaintiffs' request for attorneys' fees. Defendants claim that plaintiffs' application is defective because plaintiffs' attorneys failed to submit their contemporaneous time records and that the time records filed with the Court are unduly vague. Further, defendants assert that the hourly rates requested by plaintiffs' attorneys are exorbitant and unreasonable. Defendants also challenge the propriety of any award to Wilson. Finally, defendants contend that expert witnesses' fees are not recoverable and that plaintiffs failed to document properly their demand for deposition and trial transcript costs.

With respect to plaintiffs' attorneys' failure to submit contemporaneous records, the Court notes that both Levine and Wulf stand ready to produce them. In light of the Second Circuit's rulings in *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 at 1147–48 (2d Cir.1983) [hereinafter *"Ass'n for Retarded Children v. Carey"*], the Court orders these records be produced for inspection by defendants' counsel and the Court. *See McCann v. Coughlin, supra*, 698 F.2d at 131. The Court will determine an appropriate award after these records are reviewed

and in accordance with the other rulings found in this Memorandum and Order.

■ With respect to defendants' assertion that the records produced are unduly vague, the Court notes that plaintiffs' attorneys need only provide records identifying "the general subject matter of [their] time expenditures." *Hensley, supra*, 103 S.Ct. at 1941 n. 12. As defendants correctly observe, however, several of the time entries fail to satisfy this requirement. For example, plaintiffs' attorneys must do more than state that on a particular day they did "research." [9] Similarly, to evaluate plaintiffs' application properly, the Court must know who Mushlin, L. Friedman, R. Ginsberg, R. Frank and others are.[10] Because the Court is ordering the production of their contemporaneous records, plaintiffs' attorneys will be permitted to amplify the pertinent records already submitted.

■ Turning to defendants' claim that the hourly rate requested by Levine is unreasonable,[11] the Court initially observes that he has extensive experience in civil rights litigation.[12] Moreover, the rates requested cannot be considered unreasonable when compared to "the normal rate in the legal community for substantially similar work by competent practitioners." *McCann v. Coughlin, supra*, 698 F.2d at 130. Accordingly, the Court would be inclined to award Levine the hourly rate he requested; however, the Court's rulings *infra* require further submissions.

■ Levine seeks $175 per hour for work performed over a four-year period. This request is inconsistent with the Second Circuit's directive in *Ass'n for Retarded Children v. Carey, supra*, at 1152–54, to use historic rather than current rates in setting fees in multi-year cases. Moreover, because the Court is limiting much of Levine's fee pursuant to Rule 68, compensat-

---

**9.** *See, e.g.*, Levine Affidavit, Exhibit A, Mar. 27, Apr. 19, May 25, Oct. 30, 1979.

**10.** *Id.*, Mar. 2, Mar. 15, Oct. 9–10, 1979; Jan.-Feb. 1980.

**11.** Because plaintiffs are not entitled to recover costs incurred after October 20, 1980, neither Wulf nor Wilson can be compensated.

**12.** *See* note 2 *supra*.

ing him at current rates for services performed in 1979 and 1980 would create a windfall—a result this Court must avoid. *See id.* at 1149, 1153. Accordingly, Levine must modify his request to reflect the rates he charged in 1979 and 1980. The Court is aware that Judge Sand awarded Levine $150 per hour for work performed during the relevant time period.[13] Given Levine's experience, the complexity of this action, and the rates normally charged in this community for substantially similar work in 1979 and 1980, the Court is inclined, after reviewing his contemporaneous records, to award Levine $150 for each hour of billable time determined to be reasonably expended on behalf of plaintiffs.

The Court finds unconvincing defendants' contention that an award of this amount is excessive. First, other courts have made similar awards. *See McCann v. Coughlin, supra,* 698 F.2d at 130 (look favorably upon a request for $120 per hour); *Matter of Cap'n Rick Corp.,* 525 F.Supp. 31, 35 (S.D.N.Y.1981) (approving request for $150 per hour); *City of New York v. Darling-Delaware,* 440 F.Supp. 1132, 1134 (S.D.N.Y.1977) (approving requests for $150 and $175 per hour). While the Court recognizes that several of the above-mentioned cases do not involve civil rights claims, they are instructive in deciding what an appropriate fee would be for substantially similar work. Second, Levine's extensive experience in civil rights litigation cannot be discounted. Third, the complex legal questions presented by this litigation support the Court's suggested award. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir. 1974). In light of its rulings, *infra,* however, the Court need not address defendant's assertions that the applications of Wulf and Wilson are unreasonable.

Although a lodestar figure cannot be determined until Levine's contemporaneous records are reviewed, an upward adjustment of this award, whatever it may be, is warranted. First, as stated previously, the legal issues involved were unsettled at the time this suit was initiated. Second, unlike *Zarcone v. Perry,* 581 F.2d 1039, 1044 (2d Cir.1978), it was not entirely clear that plaintiffs would prevail on the question of liability.[14] Third, the skill displayed by Levine throughout this action and the services he provided plaintiffs merit an upward adjustment. Accordingly, any award of attorneys' fees made to Levine will be increased by fifteen percent. The Court considers this bonus necessary to encourage attorneys with similar experience to undertake "difficult cases in which victory is uncertain." *Ass'n for Retarded Children v. Carey, supra,* at 1154.

Plaintiffs also seek to recover expert witness fees as part of their costs. This application is denied for two reasons. First, because these costs were incurred after defendants' offer of judgment, Rule 68 precludes the Court from taxing them against defendants. Second, this Circuit follows the general rule that expert witness fees in excess of the statutory fee are not recoverable. *In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975,* 687 F.2d 626, 631 (2d Cir.1982) [hereinafter *"In re Air Crash"*]; *accord, Henkel v. Chicago, St. Paul, Minneapolis & Omaha Railway,* 284 U.S. 444, 447–48, 52 S.Ct. 223, 225, 76 L.Ed. 386 (1932) [*"Henkel"*]. While the Court recognizes that other circuits permit plaintiffs in civil rights actions to recover expert fees that were necessary or indispensable to the proof of their claims, *see Thornberry v. Delta Air Lines, Inc.,* 676 F.2d 1240, 1244–45 (9th Cir.1982), *remand-*

---

13. *Forest v. New York City Criminal Justice Agency,* 79 Civ. 7041 (LBS) (S.D.N.Y. Oct. 1, 1982).

14. That defendants offered to compromise this matter for a significant amount does not alter the Court's conclusion. Although defendants obviously believed that a finding of liability was possible, settling this action could have avoided

the adverse publicity associated with a jury verdict. Similarly, while Department of Corrections memoranda and press releases raised questions of fact with respect to defendants' liability, the Court always believed, however, that a good faith defense might overcome this evidence.

ed, —— U.S. ——, 103 S.Ct. 2421, 77 L.Ed.2d·1311 (1983); *Roberts v. S.S. Kyriakoula D. Lemos,* 651 F.2d 201, 205–06 (3d Cir.1981); *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.)·(en banc), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981), absent a clear indication that Congress intended to alter the rule established in *Henkel, supra,* when 42 U.S.C. § 1988 was enacted, *see Jones v. Diamond, supra,* 636 F.2d at 1391 (Coleman, C.J., dissenting), the Court is constrained to follow this Circuit's rule recently reaffirmed in *In re Air Crash, supra.* Moreover, the Court is not prepared to say that Dr. Rundle's testimony was indispensable to plaintiffs' claims. While it is clear that his testimony aided plaintiffs' case, the implication from the jury's verdict—that the administrators of Riker's Island failed to implement and supervise a suicide prevention program properly—does not necessarily flow from his testimony. Therefore, assuming an award of expert fees was appropriate, Dr. Rundle's request would have to be reduced.

■■■■■ Plaintiffs' application for deposition costs also is defective in that the cost for each deposition is not substantiated. Because plaintiffs cannot recover deposition costs incurred after October 20, 1980, the Court is precluded, at this time, from awarding plaintiffs their deposition costs.[15] Further, plaintiffs, by not itemizing their costs, make it impossible for the Court to decide whether the depositions were necessarily obtained for use in the case. 28 U.S.C. § 1920(2). Therefore, the Court directs plaintiffs to file an itemized list of their deposition ·expenses in conjunction with the submission of Levine's contemporaneous records. The Court will then tax, if any, the relevant deposition costs.

■■■■■ Turning to both parties' requests for trial transcript costs, the Court notes that in several respects both applications are defective. Neither party has explained why daily transcripts in this case

were necessary. *See Galella v. Onassis,* 487 F.2d 986, 999 (2d Cir.1973). This trial was not inordinately long nor were the factual issues difficult or complex. Accordingly, the Court concludes that daily transcripts were a convenience to counsel; thus, both applications for trial transcripts costs are denied. *See In re Air Crash Disaster, supra,* 687 F.2d at 632. Moreover, Rule 68 precludes plaintiffs from recovering their costs incurred after October 1980, which obviously includes the costs of trial transcripts obtained in 1982.

■■■■■ With respect to defendants' claim for deposition costs, Rule 68 clearly indicates that plaintiffs must pay defendants' costs incurred after the offer of judgment. *See Liberty Mutual Insurance Co. v. EEOC,* 691 F.2d 438, 442 (9th Cir.1982). The depositions of both Ronald and Tenner Lyons were admitted at trial; thus, the Court finds these depositions to be necessary to defendants' case and the request is reasonable and proper. Accordingly, defendants are awarded their requested deposition costs.

### Rule 68

■■■■■ To determine the applicability of Rule 68 to the instant action, the Court must decide what *costs* are in this action and whether policy or ethical considerations require a modification of the meaning of costs to achieve a particular result. For the reasons set forth below, the Court concludes that costs for the purposes of this action include attorneys' fees and that·Rule 68 requires that plaintiffs' attorneys be denied fees incurred after October 20, 1980.

■■■■■ The parties agree that the Civil Rights Act imposes attorneys' fees as part of costs. *See Maher v. Gagne,* 448 U.S. 122, 131 n. 14, 100 S.Ct. 2570, 2576 n. 14, 65 L.Ed.2d 653 (1980); *Hutto v. Finney,* 437 U.S. 678, 693, 695, 98 S.Ct. 2565, 2574, 2575, 57 L.Ed.2d 522 (1978); *McCann v.*

---

**15.** Levine's affidavit indicates that depositions were taken before defendants' offer of judg-   ment.

*Coughlin, supra,* 698 F.2d at 128.[16] Plaintiffs argue, however, that for the purposes of Rule 68, attorneys' fees cannot be considered part of costs. While a recent decision of the Seventh Circuit arguably lends credence to this argument, *see Pigeaud v. McLaren,* 699 F.2d 401 (7th Cir.1983), the majority of cases and the more reasoned view in the Court's opinion supports defendants' contention that in a civil rights action attorneys' fees are costs for the purposes of Rule 68, *see Chesny v. Marek,* 547 F.Supp. 542 (N.D.Ill.1982); *Waters v. Heublein, Inc.,* 485 F.Supp. 110 (N.D.Cal. 1979); *Scheriff v. Beck,* 452 F.Supp. 1254 (D.Colo.1978); *Perkins v. New Orleans Athletic Club,* 429 F.Supp. 661 (E.D.La. 1976).[17]

First, while as a general rule costs do not include attorneys' fees, *see Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Russo v. State of New York,* 672 F.2d 1014, 1023 (2d Cir. 1982), courts have the authority to award attorneys' fees to further "the orderly administration of justice as between all parties properly within its jurisdiction," *Fairmont Creamery Co. v. Minnesota,* 275 U.S. 70, 74–75, 48 S.Ct. 97, 99, 72 L.Ed. 168 (1927); *accord, Class v. Norton,* 505 F.2d 123, 127 (2d Cir.1974). Thus, the historical differences between costs and attorneys' fees are not as great as plaintiffs contend. Moreover, there is no question that attorneys' fees in this case are part of costs. 42 U.S.C. § 1988.

Second, *Pigeaud v. McLaren, supra,* is distinguishable. In that case, the Seventh Circuit plainly stated that the plaintiff was not a prevailing party for the purposes of section 1988. *Pigeaud v. McLaren, supra,* 699 F.2d at 402. Plaintiff's alternative argument that he was entitled to attorneys' fees pursuant to Rule 68 was, therefore, rejected applying the general rule that costs do not include attorneys' fees. In the case at bar, however, plaintiffs are prevailing parties and are entitled to reasonable

---

**16.** The Court finds unpersuasive plaintiffs' argument that *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) ["*White*"] compels a finding that costs in this action do not include attorneys' fees. While the Supreme Court specifically declined to rule that attorneys' fees awarded pursuant to 42 U.S.C. § 1988 are costs for the purposes of Rules 54 and 58, *White, supra,* 455 U.S. at 454 n. 17, 102 S.Ct. at 1168 n. 17, the Court's reversal indicates that the First Circuit's reasoning that attorneys' fees were not costs cannot be followed. Similarly, the holding in *Metcalf v. Borba,* 681 F.2d 1183 (9th Cir.1982), that a local rule governing the taxing of costs did not apply to a request for attorneys' fees under § 1988, does not make Rule 68 inapplicable to plaintiffs' application. First, the Ninth Circuit, relying on dicta in *White, supra,* determined that a local rule specifically dealing with fee requests was the appropriate means of establishing time limits for making such motions. *Id.* at 1187–88. Thus, because there is no question that plaintiffs' request is timely, the Court finds *Metcalf v. Borba, supra,* to be of little value herein. *See Gautreaux v. Chicago Housing Authority,* 690 F.2d 601, 611 (7th Cir. 1982) (*Metcalf v. Borba, supra,* concerns relationship between local rule and timing of motion for attorneys' fees). *Second,* the opinion expressed in *Metcalf v. Borba, supra,* that the definition of costs found in 42 U.S.C. § 1988 cannot be applied to other sections of the Unit-

ed States Code or the Federal Rules of Civil Procedure has not been widely followed. *See Spray-Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226, 1248–49 (7th Cir.1982); *Brown v. City of Palmetto,* 681 F.2d 1325, 1326 (11th Cir.1982); *Knighton v. Watkins,* 616 F.2d 795, 798 (5th Cir.1980).

**17.** The Court also rejects the argument that *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) and *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) require a different result. In *Hutto v. Finney, supra,* on at least four separate occasions, the Supreme Court stated that attorneys' fees awarded pursuant to § 1988 were part of costs. Moreover, the Court's reliance on *Fairmont Creamery v. Minnesota,* 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927), further supports the conclusion that attorneys' fees must be considered costs in their "technical sense." Similarly, the reasoning which led the Supreme Court to conclude that attorneys' fees could not be awarded as part of costs under 28 U.S.C. § 1927, *Roadway Express, Inc. v. Piper, supra,* 447 U.S. at 761–62, 100 S.Ct. at 2461–62, compels the conclusion that plaintiffs' request for attorneys fees are costs. *See* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5913 (attorney's fees in civil rights case characterized as costs); *see also Fulps v. Springfield,* 715 F.2d 1088, at 1189 (6th Cir.1983).

attorneys' fees. Similarly, plaintiffs' reliance on *Greenwood v. Stevenson,* 88 F.R.D. 225 (D.R.I.1980), is misplaced. The court, in that case, concluded that Rule 68 did not bar an award of attorneys' fees in a civil rights suit because of a ruling by the First Circuit that postjudgment motions for attorneys' fees was governed by Fed.R. Civ.P. 59(e). *See White v. New Hampshire Department of Employment Security,* 629 F.2d 697 (1st Cir.1980), *rev'd,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) [*"White"*]. Thus, *Greenwood v. Stevenson, supra,* has little or no precedential value. *Chesny v. Marek, supra,* 547 F.Supp. at 546. Indeed, the court recognized that but for the decision in *White, supra,* it would have followed *Waters v. Heublein, supra,* and applied Rule 68 to a request of attorneys' fees. *Greenwood v. Stevenson, supra,* 88 F.R.D. at 231.

■ Third, application of Rule 68 is not inconsistent with the purpose of awarding attorneys' fees to prevailing plaintiffs in civil rights suits. Such awards are made to encourage the initiation of meritorious actions while deterring frivolous litigation. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 762, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980); *Kerr v. Quinn,* 692 F.2d 375, 377 (2d Cir.1982). Rule 68, on the other hand, is intended to encourage settlements and avoid protracted litigation. *See Delta Air Lines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981); *Mr. Hanger, Inc. v. Cut Rate Plastic Hangers, Inc.,* 63 F.R.D. 607, 610 (E.D.N.Y.1974). Although the Court recognizes that a civil rights plaintiff who rejects an offer of judgment which exceeds the amount ultimately recovered necessarily may be disadvantaged, there is nothing inherently wrong with encouraging settlement of civil rights suits, *see Chesny v. Marek, supra,* 547 F.Supp. at 547; *see also Hensley, supra,* 103 S.Ct. at 1940. Settlement of any action should be fostered to avoid extensive litigation both at the trial

and appellate levels. Moreover, by providing an incentive to compromise a lawsuit, Rule 68 requires a civil rights litigant to carefully weigh a possible settlement against the uncertainties of trial. *See Delta Air Lines, Inc. v. August, supra,* 450 U.S. at 352, 101 S.Ct. at 1150. In addition, Rule 68 permits institutions or individuals like the City of New York who are defendants in numerous civil rights suits to limit their costs in some cases, *see Truth Seeker Co. v. Durning,* 147 F.2d 54, 56 (2d Cir. 1945), and concentrate their efforts on others.

■ Finally, the Court rejects plaintiffs' assertion that defendants' offer was defective and unethical. Initially, the Court notes that plaintiffs' argument is inconsistent with their contention that Rule 68 does not cover awards of attorneys' fees. In any event, defendants' offer did not ask plaintiffs' counsel to waive his claim for attorneys' fees; thus, the concerns voiced by the Association of the Bar of the City of New York's Ethics Committee are not relevant.[18] Further, that defendants' offer did not include a specific amount for attorneys' fees does not make the offer defective. Although Justice Powell has expressed the view that a Rule 68 offer should include a specific award of attorneys' fees, *see Delta Air Lines, Inc. v. August, supra,* 450 U.S. at 364, 101 S.Ct. at 1156 (Powell, J., concurring), this position has not been widely accepted. Indeed, were the Court to accept plaintiffs' argument, serious ethical problems might arise. For example, a defendant could make a generous offer to a plaintiff which included a nominal award for attorneys' fees, thereby placing plaintiffs' attorney in a difficult ethical quandry. Thus, requiring defendants to include attorneys' fees then accrued in an offer of judgment but leaving the determination of an actual amount to plaintiffs and their attorneys protects against the ethical concerns voiced by plaintiffs. In addition, Justice Powell's contention that

---

**18.** *See* Association of the Bar of the City of New York, Committee on Professional and Judicial Ethics, Opinion No. 80–94 (1981).

a Rule 68 offer should specify a dollar amount for attorneys' fees stands at odds with his later statement in *Hensley, supra,* 103 S.Ct. at 1941, that litigants should attempt to settle the question of attorneys' fees. Accordingly, because defendants' offer of judgment included an award of attorneys' fees it was not defective. *See Pigeaud v. McLaren, supra,* 699 F.2d at 403–04.

█ The Court is, therefore, constrained to apply Rule 68 and bar plaintiffs from recovering their costs incurred after October 20, 1980. This includes the request for attorneys' fees associated with making this application—which generally are recoverable. *See Goodman v. Heublein, Inc.,* 682 F.2d 44, 48 (2d Cir.1982). The Court concludes that is appropriate because there is no reason to reward an attorney for work "necessitated by a mistaken judgment that failed to obtain any additional benefits." *Waters v. Heublein, Inc., supra,* 485 F.Supp. at 114. Alternatively, the failure of plaintiffs' attorneys to produce their contemporaneous records justifies denying them compensation for preparing and litigating the instant application. *See Ass'n for Retarded Children v. Carey, supra,* at 1148.

█ One issue not addressed by either party merits discussion. When the offer of judgment was made neither Wood nor plaintiffs' individual claims for compensatory damages were part of the complaint. Presumably, it could be argued that defendants' Rule 68 offer was ineffective because the jury found Wood liable and awarded plaintiffs' damages in their individual capacities. If plaintiffs had made such an argument, the Court would have rejected it for the following reasons. First, as a practical matter, there is only one defendant in this case—the City of New York. None of the defendants were sued in their individual capacity, rather, all were sued for acts done as employees of the New York City Department of Corrections. Moreover, both parties recognize that pursuant to N.Y.Gen.Mun.Law § 50–k (McKin-

ney Supp.1982), the City is liable for the jury's verdict.

Second, what would have happened had plaintiffs accepted the offer further supports the Court's conclusion. There can be little doubt that if plaintiffs accepted the offer, *res judicata* or collateral estoppel would have prevented a subsequent suit against Wood or a claim for damages premises on a different legal theory because both "could have been raised in [the prior action]." *Federated Department Stores, Inc. v. Motie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). In addition, there is no question that the factual allegations which would form the basis of a claim against Wood or for plaintiffs' damages as individuals would be the same as the facts raised in the instant complaint. *See Berlitz Schools of Languages of America, Inc. v. Everest House,* 619 F.2d 211, 215 (2d Cir.1980). Thus, the Court finds that defendants' offer of judgment was intended to apply to all existing and future claims against the City and its employees concerning the death of Larry Lyons.

In summary, the Court decides that as prevailing parties, plaintiffs are entitled to attorneys' fees for work performed through October 20, 1980. The actual amount will be determined after the Court reviews Levine's contemporaneous records. Unless convinced otherwise, the Court intends to compensate Levine at a rate of $150 per hour. Any award will be enhanced by fifteen percent. Plaintiffs must also submit documentation substantiating their request for deposition costs. Upon receipt of this information, the Court will determine the propriety of an award in this area. Plaintiffs' demand for expert witness fees and the costs of daily transcripts are denied. Defendants' request for attorneys' fees and the costs of daily transcripts also are denied. Defendants are awarded deposition costs in the amount of $431.95.

While this action raises significant legal questions and touches on occurrences important to both sides, the Court suggests that the parties take heed of Justice Pow-

ell's observation and settle the question of attorneys' fees. Further proceedings and appeals will be costly and will not advance the interests of plaintiffs or defendants.

## CONCLUSION

In accordance with the foregoing, plaintiffs' application for costs and attorneys' fees is granted in part and denied in part. 42 U.S.C. § 1988.

Defendants' cross-motion for costs and attorneys' fees is granted in part and denied in part. Fed.R.Civ.P. 68.

Plaintiffs' attorney is directed to serve and file within twenty-one (21) days of the date of this Memorandum and Order his contemporaneous time records from the inception of this suit until October 20, 1980. In addition, documentation substantiating plaintiffs' request for deposition costs should be filed at the same time. If they desire, defendants may file comments on plaintiffs' submissions fourteen (14) days thereafter.

SO ORDERED.